## WILLIFORD *v.* THE STATE.

1. A misdemeanor convict who has escaped lawful confinement may be recaptured by any peace officer without a warrant. If the escaped convict slay the officer to prevent the capture, the homicide will be murder.

2. Where a motion for a change of venue was made upon the ground of inflamed and excited public opinion prejudicial to the accused, and the judge after hearing evidence denied the motion and no exception was taken to the refusal to grant a change of venue, the same contentions which were the basis of the motion can not be again urged as a ground for a new trial. The remedy was to except to the overruling of the motion to change the venue.

3. The charge that a presumption of malice arose upon proof of an unprovoked killing was not open to the objection that it excluded from the jury consideration of evidence introduced by the State tending to show that the homicide was to prevent a capture of an escaped convict without a warrant, which would reduce the offense to manslaughter. A homicide under circumstances pointed out in the first headnote is murder, and not manslaughter.

4. The evidence authorized a submission to the jury of the issue of fact as to defendant being an escaped convict from a lawful chain-gang.

5. There being no merit in any of the special assignments of error set forth in the motion for a new trial, and the evidence fully warranting the verdict, no reason appears why the conviction of the defendant should be set aside.

Argued October 20, — Decided November 10, 1904.

Indictment for murder. Before Judge Spence. Mitchell superior court. September 26, 1904.

*Scaife & Lane* and *Sam. S. Bennet,* for plaintiff in error.

*John C. Hart, attorney-general,* and *W. E. Wooten, solicitor-general,* by *Arnold & Arnold,* contra.

EVANS, J.  The indictment under which the defendant was tried alleged that he had committed the offense of murder by unlawfully, feloniously, and with malice aforethought killing one Harmon West by shooting the said Harmon West with a certain pistol, inflicting a wound from which wound said Harmon West died.  The jury found the defendant guilty, without any recommendation.  He made a motion for a new trial, to the overruling of which he excepts.  The evidence disclosed that there was only one eye-witness to the homicide.  That witness testified substantially as follows:  His father was a justice of the peace, and, the regular bailiff having died, witness had been specially deputized to act as bailiff.  On Monday morning previous to the homicide, he had taken the oath for emergent constables, and after taking the oath he requested Mr. West, the deceased, to aid him in the arrest of the defendant.  Witness had recently heard that the defendant had escaped from the chain-gang and that a reward of twenty-five dollars had been offered for his recapture.  Witness made an investigation of the whereabouts of the defendant, finally receiving information that he was located at a certain turpentine still.  Deceased and the witness went to the still for the purpose of effecting the defendant's arrest.  After arriving there and making inquiries, they saw defendant run to the house of a certain woman, and they went to the house and made a casual examination, but were not able to find the defendant.  The woman in whose house they were searching informed them that the defendant was not there.  They left the house and proceeded to another house, and there determined the defendant must be secreted in the house where the search had just been made.  On their return to this house they saw no one in the house, but discovered a hat lying on the floor.  In the loft or ceiling immediately above the place where the hat was lying they discovered an opening where a twelve-inch plank had been turned back. The deceased handed his pistol to the witness, remarking, "Here, take my pistol."  Deceased then got on a chair, and, with the help of the witness, was preparing to go through the hole into the loft when, just as he caught hold of the ceiling and drew his head

into the opening, the defendant fired with a pistol. The weapon was so close that the powder burned the hat of the deceased. Immediately after firing upon the deceased, the defendant fired upon witness, inflicting a wound in his shoulder. The deceased died from the effects of the wound thus received. It further appeared from the evidence of the State that the defendant escaped into Florida and was there arrested. He confessed to the arresting officers that he had escaped from the chain-gang prior to the killing of West. This was substantially the case made out for the State. The defendant in his statement said that some boys came from the commissary at the turpentine still and told him there were two white men looking for him and that he had better look out. He desired to get away from them, but everything was so open that he went across to the house where the homicide occurred, and about the time he got into the yard the deceased and his companion started from the commissary and some one pointed him out to them. He went into the house and hid. After coming into the house and searching for him they left, but shortly returned. In the meantime he had climbed into the loft through a hole right over the window. When the men who were searching for him came back to the house, one of them said: "The damn son of a bitch is in there, and there aint no use saying he aint, and I am going to kill him." This remark scared the defendant. He saw them through a crack in the house as they approached and entered it, and both of them had pistols in their hands. One of them stepped into the window and started to climb into the loft, and the defendant, realizing that he would be caught and being scared, said: "What do you want with me, captain?" The deceased replied, "I will show you as soon as I get up there;" then raised up, with one hand on the plank and a pistol in the other hand, and before he could do more the defendant shot him and he went back into the hole. His companion then went outside into the yard and hollered, "Come here, people!" He had his pistol in his hand, hollering to the people at the commissary and watching for the defendant, and when the defendant ran from the house turned to shoot him, but defendant shot before he did, and escaped.

1. In the amendment to the motion for a new trial the defendant contends that under the undisputed evidence the highest

grade of offense for which he could be convicted was that of voluntary manslaughter. If the defendant killed the deceased to prevent an illegal arrest and not in a spirit of revenge, the crime would be voluntary manslaughter. *Croom* v. *State*, 85 *Ga.* 718. So this contention hinges on the legality of the arrest. "An arrest may be made for a crime by an officer, either under a warrant, or without a warrant, if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." Penal Code, § 896. Let it be conceded that at the time of the homicide the deceased and the constable were attempting to effect the capture of a misdemeanor convict who had escaped from the chain-gang, and that they were not provided with a warrant. The evidence justifies this conclusion of fact. The officer and the deceased were attempting the capture of an escaped misdemeanor convict; they were attempting to retake in custody an escape. There is a distinction between making an arrest of a person charged with the commission of crime for the purpose of bringing him before the court for trial, and the capture of one already convicted of crime who has escaped the custody of the law. In the first instance the person who has not been tried has all the presumptions of innocence in his favor. The law surrounds him with all the safeguards for the protection of his liberty. He can not be deprived of his liberty even by an officer, unless the officer acts within the law providing for arrests. But in the case of a fugitive convict, his conviction deprived him of his mantle of innocence. By the judgment of the court he has been imprisoned, and pending his sentence he has no right to be at large. If he refuses to submit to the mandate of the court and defies the law by escaping from legal confinement, he can not complain that a peace officer retakes him without a warrant. To hold otherwise is to allow the escaped convict to take advantage of his own wrong and to claim a privilege granted only to citizens who are presumed to be innocent of crime. At common law an escaped felon could be arrested by any one without a warrant. 1 Bish. Cr. Proc. § 1383; 3 Cyc. 897; 11 Am. & Eng. Enc. L. (2d ed.) 313. If there is no statute abridging this right of arrest without warrant, it still exists. Ex parte Sherwood, 29 Tex. App. 334. There is no statute of this State, of which we

are aware, providing for retaking or recapturing a fugitive convict who has escaped from the place where he was lawfully confined after conviction. It is true that the Penal Code, §§ 314 and 316, makes provision for the punishment of both misdemeanor and felony convicts who escape from custody; but these sections are silent as to the manner in which their capture may lawfully be effected, and deal only with the penalty to be visited upon them when retaken. All of the authorities go to the extent that an escaped felon may be recaptured without a fresh warrant; and, as is pointed out by Mr. Bishop, there is no distinction between an escaped felon and a misdemeanor convict who has effected his escape, so far as the question of capture without a warrant is concerned. The controlling question is not whether the convict has been guilty of a felony, which might of itself subject him to rearrest, but whether he is legally at liberty. If he is not, then any peace officer may arrest him without a warrant and restore him to the imprisonment to which the court has sentenced him. Simpson v. State, 56 Ark. 8, 19 S. W. 101. It is the duty of the officer to take prompt action in effecting the capture of the escape, and to then turn him over to his lawful custodians within a reasonable time. McQueen v. State (Ala.), 30 So. 414.

As we have taken pains to point out, the deceased and the constable, at the time of the homicide, were not attempting to arrest one suspected of having committed a criminal offense, but were endeavoring to effect the capture of a misdemeanor convict who had escaped from the chain-gang. It was not necessary that they should have a warrant to effect this purpose. If the deceased was acquainted with their purpose, he should have yielded to a demand that he surrender himself in order that he might be restored to the legal custody from which he had escaped. Before they actually discovered his whereabouts or had an opportunity to acquaint him with their purpose, and after the deceased had delivered his pistol to the constable and was endeavoring to go unarmed into the loft of the house in search of the defendant, the defendant without any warning fired upon and killed the deceased. Such was the case as shown by the State's evidence. Under these circumstances the homicide was murder, and not voluntary manslaughter. Indeed, the defendant in his statement does not set up the defense that he shot the deceased to prevent

an unlawful arrest of his person, but contends that when, he saw the deceased climbing into the loft he was frightened and said, "What do you want with me, captain?" and the deceased replied, "I will show you as soon as I get up there;" that he then raised up, with one hand on the plank and a pistol in the other hand, and not until then did defendant, in self-defense, fire upon him. The testimony of the State negatived the contention of the defendant that any. conversation occurred between the deceased and himself immediately before the fatal shot was fired. The jury had the right to accept either version of the affair. They believed the testimony for the State; and the case thus made is that of a peace officer, with one who was deputized to assist him, searching for an escaped convict who, on realizing that his presence would be discovered, fired upon both without warning, killing one of them and wounding the other. A killing under such circumstances can not be regarded otherwise than as deliberate and premeditated murder.

2. The complaint in the second ground of the amended motion is that the trial was had at a time and place when and where there was such public excitement and feeling against the defendant as caused the authorities to procure the attendance of three companies of the State militia to preserve order and prevent mob violence, and the trial was had with the public excluded from the court-room. The record discloses that upon this very ground the defendant made a motion for a change of venue and submitted evidence in support of such motion. After hearing the evidence the judge overruled the motion for a change of venue, and no exception to that ruling was taken by the defendant. The matters set up in this ground of the amendment have been passed on by the court in disposing of the motion for a change of venue; and if the defendant had wanted to review the judgment of the court upon this point, he should have made a proper exception to the judgment of the court overruling his motion. Failing to make this exception, he can not take advantage of these matters in his motion for a new trial.

3. Exception is taken to a charge of the court to the effect that whenever, in this kind of a case, it appears to the satisfaction of the jury that the deceased was killed at the hand of the defendant, then the presumption of innocence in his favor is removed,

and the law presumes that the killing was done with malice afore-thought.    No complaint is made that the charge was incorrect as an abstract proposition of law.    But the defendant insists that this charge was erroneous, because "the evidence introduced by the State to prove the killing of the deceased also showed circum-stances of justification and mitigation; showed that the killing was done in order to prevent the illegal arrest upon the person of the defendant; and this charge ignored that part of the evidence." As we have already shown, the attempted apprehension of the defendant was not illegal, notwithstanding no warrant for his arrest had been procured; and this being true, the homicide was, under the circumstances shown by the State's evidence, wholly without justification or mitigation.    The statement of the defend-ant alone discloses any extenuating circumstances connected with the killing; and the court gave to the defendant the full benefit of his statement by charging fully both upon the law of justifiable homicide and upon the law of voluntary manslaughter.

4. The last two grounds of the amended motion complain that the court erred in submitting to the jury whether the defendant was really an escaped convict from the chain-gang; whether he had been guilty of making an escape from a lawful chain-gang before he had finished serving out his term; and instructing the jury upon the subject of the right of a constable to effect an arrest of one who has made an escape from a lawful chain-gang. No exception is made to the charge on the ground that it was not a correct statement of the law in the abstract; but complaint is made that the charge was unwarranted by the evidence, because there was no evidence to show that the defendant was an escaped convict.    The charge is not open to the criticism made against it; for by reference to the abstract of the facts appearing in this opinion it will be seen that the defendant confessed that he had made an escape from a chain-gang.    When a person is confined in a chain-gang, the presumption is that he is lawfully confined therein; and a confession that he has escaped from a chain-gang is to be regarded as evidence that he escaped while lawfully con-fined therein.

5. There being no merit in any of the special assignments of error set forth in the motion for a new trial, and the evidence

fully warranting the verdict returned by the jury, no reason appears why the conviction of the defendant should not be allowed to stand. · *Judgment affirmed. All the Justices concur.*