## LANDRUM *v.* LANDRUM.

1. Where the allegations of a petition in a habeas-corpus proceeding are positive statements that are verified by the affidavit of the petitioner positively swearing to the truth of such allegations, the judge may in the exercise of his discretion allow the verified petition to be read as evidence, over the objection that, under the law, pleadings can not be accepted by the court as evidence.

2. Where a mother instituted habeas-corpus proceedings against a third person for custody of an infant after the death of its father, a contract between the father and such third person, whereby the former undertook to convey to the latter the right of custody of the child until its majority, was ineffectual as against the mother, and was properly excluded from evidence on the ground that it was irrelevant.

3. Whether or not there was any error in the refusal to exclude certain evidence mentioned in the third division of the opinion on the grounds relied on, or in the rejection of certain evidence over the objections that were urged to its admission, the rulings complained of, considered in the light of other uncontradicted evidence to which there was no objection, did not materially affect the plaintiff in error, and consequently afford no cause for reversal.

4. The judge did not abuse his discretion in awarding custody of the child to the plaintiff.

No. 4408.   NOVEMBER 14, 1924.   REHEARING DENIED DECEMBER 19, 1924.

Habeas corpus.   Before Judge Bale.   City court of Floyd county. May 9, 1924.

*F. W. Copeland* and *John Camp Davis,* for plaintiff in error.
*Harris & Harris,* contra.

ATKINSON, J. A man and woman were married and had two children. The husband and wife separated while living in the State of Kansas. The husband came to Georgia, bringing the eldest child, a boy two years old, and died shortly thereafter, leaving the child in possession of the husband's mother. Soon after the death of the husband the mother of the child brought habeas-corpus proceedings in Georgia against the husband's mother, for custody of the child. On the hearing custody of the child was awarded to the plaintiff. The defendant excepted.

1. The allegations of the petition were positive statements, and attached to the petition was an affidavit of the petitioner swearing positively to the truth of all of the allegations. On the hearing before the judge, the petitioner was allowed to read as evidence the sworn petition, over the sole objection: "That under the law pleadings could not be accepted by the court as evidence; that the pleadings are only the mutual altercations between the parties and could not be introduced and treated as evidence." Error was assigned upon the ruling of the court. It has been ruled by this court: "Where the writ of habeas corpus is used as a means of determining the custody of an infant, the better practice is to hear evidence viva voce, or taken by deposition or interrogations, after notice and with opportunity for cross-examination. But this is not an absolute and inflexible rule, and the presiding judge is vested with discretion as to admitting affidavits under the circumstances of a particular case which render it necessary or proper." *Robertson* v. *Healh*, 132 *Ga.* 310 (2) (64 S. E. 73) ; *Porter* v. *McCalley*, 146 *Ga.* 594 (3) (91 S. E. 775, 93 S. E. 405). If on the hearing of a petition for habeas corpus the judge may in his discretion, in a proper case, receive in evidence affidavits of witnesses, there is no reason why he should not in his discretion, in a proper case, receive as evidence the petition positively sworn to by the petitioner. Where a petition containing positive allegations is thus sworn to, the petition is verified to the same extent by the oath of the petitioner as if the allegations were contained in a separate paper in the form of an affidavit. In 2 Corpus Juris, 318, § 4, it is said: "While it has been said that a distinction exists between an affidavit and a petition, yet in several jurisdictions it has been held that a properly verified petition is equivalent to and can be used as an affidavit." In Levy *v.* Ely (N. Y.), 15 Howard's Practice Re-

ports, 395, 398, it was said: "That a complaint verified by the party, in the manner required by the Code, is an affidavit upon which an injunction may be granted, if the facts are alleged in a sufficiently positive manner." This rule was cited with approval in City of Atchison *v.* Bartholow, 4 Kansas, 124, 128, where it was said: "We admit that a petition verified positively, and not on information and belief, is, in effect, an affidavit, and is sufficient to obtain an injunction." In *Loeb* v. *Smith,* 78 *Ga.* 504, 508 (3 S. E. 458), it was said: "It would be no strain upon substance, though perhaps some on form, to hold that a sworn petition is an affidavit; but if not an affidavit, it certainly is 'testimony.' The important matter is to have the truth of the petition vouched under the usual sanctions, religious and secular, on which the law depends for securing truth and excluding falsehood; in other words, to have the petition verified. To swear to a petition is to affirm on oath that the matters of fact alleged therein are true. The signature of the witness and the jurat of the magistrate annexed to the petition are sufficient evidence that the oath was taken by the one and administered by the other. A full and formal affidavit is not indispensable to the granting of an attachment by the judge against a fraudulent debtor under sections 3297, 3298 of the code. A petition sworn to is sufficient." As the allegations of the petition were positive statements of facts and were positively sworn to by the petitioner, it was not error for the court in the exercise of its discretion to receive the petition as evidence, over the sole objection that, under the law, pleadings could not be accepted by the court as evidence.

2. The judge rejected from evidence, when offered by the defendant, a written contract between the father of the child and the defendant, purporting to have been executed on a date which was shown by the evidence to be after separation of the father and mother of the child, and before any divorce between them. Shortly before institution of the habeas-corpus proceedings the father of the child died, thus leaving its mother as its only living parent. The contract which was rejected from evidence was as follows: "That the said F. W. Landrum [father of the child], for and in consideration of the natural love and affection he has and bears for his mother, the said Mrs. Samantha Landrum [the defendant], and for the further consideration of the benefit accruing to his

son, Felton William Landrum [the child whose custody was the subject of controversy], a minor child age two years, does hereby give and convey the said minor child, Felton William Landrum, to his said mother, Mrs. Samantha Landrum, together with all right, title, interest, custody, and control of said child. That said Mrs. Samantha Landrum agrees to take all proper care of said child and to furnish him with all the necessaries of life, and education compatible with his and her station of life. The said F. W. Landrum hereby consents to the adoption of said minor child by Mrs. Samantha Landrum at her option." The ground upon which the contract was rejected from evidence was that it was not binding as against the mother of the child, and consequently was irrelevant. Error is assigned upon the ruling of the court rejecting the evidence. If the contract was not binding as against the mother, it was irrelevant to the issues in the case. Therefore the question is as to the binding effect of the contract as against the mother of the child.

The contract was not an attempt by the father, under the provisions of the Civil Code (1910), § 3123, to apprentice the child. *Eaves* v. *Fears,* 131 *Ga.* 820 (64 S. E. 269). It was simply an undertaking by the father, without concurrence of the mother, to contract away to a third person the custody and parental authority over the child during its minority. It is not necessary to decide whether a father, while living separate from his wife, can as against his wife dispose of an infant by such a contract, where the mother does not consent to or ratify the act of the father (as to which see Park's Code, § 3022(a) ; Bryant v. Dukehart, 106 Oregon, 359 (210 P. 454) ; People ex rel. Delaney v. Mt. St. Joseph's Academy, 189 N. Y. Supp. 775; People ex rel. Beaudoin v. Beaudoin, 126 App. Div. 505 (110 N. Y. Supp. 592) ; Thompson v. Thompson, 72 N. C. 43), because that is not the whole case. The question is, will such a contract be binding against the mother after the father dies while the child is still an infant. It is declared in the Civil Code (1910), § 3022: "Upon the death of the father, the mother is entitled to the possession of the child until his arrival at such age that his education requires the guardian to take possession of him. In cases of separation of the parents, or the subsequent marriage of the survivor, the court, upon writ of habeas corpus, may exercise a discretion as to the possession of the child, looking solely

to his interest and welfare." The first clause of this statute declares the right of a mother to custody of a child after the death of its father. The second clause relates to disposition of the child where both parents are living and in a state of separation. The first clause applies particularly to the case under consideration. As the mother's right to custody of the child on the death of its father was declared by statute, the father could not contract such right away. His contract might be binding as against himself, but could not deprive the wife of her right to custody of her child after the father's death.

In Moore *v.* Christian, 56 Miss. 408 (31 Am. R. 375), it was said: "A father gave his son, ten years of age, to a man of good character and ample means, to keep him during minority. The father dying three years afterward, the mother brought habeas corpus for the child. Held, that she was entitled to his custody, although she was poor and dependent, and he preferred remaining with defendant." In the opinion Chalmers, J., said: "Nature gives to parents that right to the custody of their children, which the law merely recognizes and enforces. It is scarcely less sacred than the right to life and liberty, and can never be denied save by showing the bad character of the parent, or some exceptional circumstances which render its enforcement inimical to the best interests of the child. . . Conceding that there was in this case a contract, based upon a legal consideration and binding upon the father—upon which we express no opinion,—it must, we think, be held to have terminated at his death. If made at all, and if a valid contract at all, it was entered into without the knowledge or consent of the mother, and could not, therefore, divest her of that right to the custody of her son which arose upon the death of the father. The father may appoint a testamentary guardian of the person or estate of his children, but he can not, by contract with a stranger, bargain away the rights of the mother after his death. The courts might, under such circumstances, refuse to restore the child to her, for good and sufficient reasons, springing out of her own character and the welfare of the child; but the objections to doing so must be based upon other considerations than her poverty, or the wishes of a boy of thirteen, seduced from filial duty by promises of presents or rewards."

The foregoing case was cited with approval in State ex rel.

Neider v. Reuff, 29 W. Va. 751 (2 S. E. 801, 6 Am. St. R. 676), where it was held: "Father's right to control the custody of his children ceases with his life. He cannot make any contract regarding their custody or services which will control them after his death, unless by indentures of apprenticeship in conformity with the provisions of some statute. On death of the father of minor children, their mother becomes entitled to their custody, notwithstanding the father in his lifetime placed them in custody of some other person, and agreed that they should remain in such custody during their minority." The decision was also followed in Beall v. Bibb, 19 App. D. C. 311, 313. In that decision it was said: "Where it appears that the father is dead and that the mother is a proper person, able and willing to provide properly for the wants of her children, nature dictates, and the law recognizes, the priority of her right to their custody and control." As the father could not contract away the right of the mother to custody of the child after his death, the contract between the child's father and its grandmother was ineffectual as against the mother, and was properly excluded from evidence as irrelevant.

3. Paragraph five of the petition, which was read as evidence, alleged that the husband took the child "from your petitioner by force, while they were living in Circleville, Kansas, and kept it hid out from your petitioner for a few days and then came to Rome, Georgia, bringing said child with him. That petitioner has never seen her said child since her said husband took it from her as aforesaid." The court overruled a motion to exclude from evidence this paragraph of the petition, on the grounds that the allegations therein expressed only the opinion of the pleader, and "that the plaintiff could not in this manner give evidence against her deceased husband in her own interest as to a transaction between herself and her said husband." The plaintiff testified that her husband had filed a suit for divorce against her in the State of Kansas, and that she had filed a cross-petition for divorce, alimony, and custody of the child; that she secured a divorce and the court awarded the child in question to her. This testimony was admitted over the objection that the petition and decree could only be proved by a proper certified exemplification from the record of the court in Kansas. A copy of the decree was set out in the verified petition, which was allowed to be used as evidence without any objec-

tion having been made thereto on the ground that the copy of the decree was not duly certified. No decision will be made as to whether the court should have excluded from evidence paragraph five of the petition on the grounds urged for its exclusion, or should have rejected the parol evidence as to the suit for divorce, alimony, and custody of the children and decree of the court in the State of Kansas, because, under other undisputed evidence, the father of the child was dead at the time the habeas-corpus suit was commenced, and the legal right of the plaintiff as mother of. the child was established, and whether or not the child was taken from the mother by force as alleged in paragraph five of the petition, or there was any divorce and award of custody of the child to the mother by decree of the Kansas court, could not have been harmful to the defendant, and consequently would not afford cause for reversal.

4. The plaintiff was sworn as a witness at the trial, and testified: "I left Kansas the 7th of January, 1924, and went to the State of Arkansas to live with my father. My mother is a sickly lady; my father is fifty-five years old. He owns a gin, a farm, and other property, and has an income of about $1500 a year. He and my mother are willing to help me with the children." On cross-examination the plaintiff testified that her husband brought the child to Georgia in the "summer of last year;" that she had no communication with any one in relation to him; that she did not learn of the death of her husband, which had recently occurred, until the sheriff wrote her about it a few days before she came to commence the suit. The father of the plaintiff testified by affidavit: that the plaintiff is residing with him in Arkansas; that he and his wife are living together and have two children living with them, one of whom is the plaintiff; witness's wife is in bad health, and plaintiff is assisting her mother in keeping house; he is willing and anxious to see that plaintiff and her two children are given a good home and properly cared for; he has given them a home with him, and is willing and able to support them; he owns a cotton-gin, a corn-mill, a good farm, and a home in which he lives, and has an income of about $1500 a year; his daughter (plaintiff) has never given him any trouble, and was in her 21st year when she was married. The plaintiff also introduced a joint affidavit by a large number of citizens of Arkansas, in which they

testified that they are personally acquainted with the plaintiff and her father; that he and his family are of the best people of the community; that plaintiff's father is "fully able financially, morally, and in every respect to care for his daughter," and that plaintiff "is a good woman in every respect, capable and worthy in every respect to take and care for her children."

The defendant testified that she owned real estate in the City of Rome, of the value of from $12,000 to $15,000, from which she had a monthly income of $80; that her family consisted of herself and adult daughter; that her son, the child's father, came from Kansas to her home in July, 1923, and brought the child with him; that he had no property or means of any kind, except about $40; that respondent took her son and grandson in her home and cared for them until her son was killed a few weeks ago; that it was her purpose to rear the child to manhood under the best moral influence, to educate him, and to provide for him in her will; that she was deeply attached to him, and desired to bestow upon him the highest and best privileges that could possibly be awarded to a child; and that in this her daughter was anxious if necessary to contribute and assist. The daughter of defendant testified: that she is the only living child of her mother; that witness owns real estate from which she receives a monthly rental of $80, and if necessary at any time in the future she is willing to assist her mother while she lives in rearing the child and to assume the whole burden if she should survive her mother. An admission was made that the defendants are good moral Christian people, and financially able to look after the child. The defendant also introduced a number of other affidavits from people residing in the village in Kansas in which the plaintiff and her husband resided, some of which were to the effect that the plaintiff was not as attentive to her household duties and her children as she might have been. As to this the plaintiff went back on the stand and made a denial.

The foregoing states in substance the evidence as to the character and ability of the respective parties to care for and rear the child. When it is all considered, the judge was authorized in his discretion in looking to the welfare of the child to award its custody to its mother.  *Judgment affirmed. All the Justices concur.*

RUSSELL, C. J., dissents on the motion for rehearing.