RICHARDSON *v.* HALL *et al.*

No. 15220. JULY 6, 1945.

*James R. Venable, Young H. Fraser,* and *Jackson L. Barwick,* for plaintiff in error.

*Roy Leathers, solicitor-general,* contra.

BELL, Chief Justice. It appears from the petition that the petitioner, who had been indicted in the superior court of DeKalb County for a misdemeanor, filed a special plea of insanity, and that, on a verdict sustaining the plea, he was adjudged to be insane and committed to the State Hospital at Milledgeville, on

June 13, 1944. On April 25, 1945, he filed the present petition for the writ of habeas corpus against the sheriff, jailor, and deputy sheriff of DeKalb County, alleging, among other things, that for seven weeks he had been at work at the home of his father at Stone Mountain, Georgia. We assume, therefore, that he remained at the State Hospital under the commitment until about March 1, 1945, that is, for approximately nine months. The petition is wholly silent as to the circumstances under which he left the hospital, but it did allege that "he is now sane and restored to health both in mind and body." It is contended in his behalf that, after thus having regained his sanity, his further detention in the State Hospital would be illegal, and therefore that his present detention looking to his return thereto is in like manner illegal. He thus insists that he is entitled to be restored to liberty by reason of matter arising ex post facto, and that under the facts alleged the writ of habeas corpus will lie.

Certainly it is true that, if the petitioner has been restored to sanity, he ought not to be further detained in an asylum for the insane, but it does not necessarily follow that his detention would be illegal pending a determination of such issue. A statute was invoked in order that he might be committed, and, by the same token, it would seem that procedure for his discharge after committal might also be prescribed by law. A person may even be wholly innocent of an alleged crime, and yet be lawfully detained pending a trial.

The following is the procedure under which the petitioner was originally committed to the hospital: "Whenever the plea of insanity is filed, it shall be the duty of the court to cause the issue on that plea to be first tried by a special jury, and if found to be true, the court shall order the defendant to be delivered to the superintendent of the Milledgeville State Hospital, there to remain until discharged in the manner prescribed by law." Code, § 27-1502. "No lunatic or person afflicted with insanity shall be tried, or put upon his trial, . . during the time he is afflicted with such lunacy or insanity, which shall be tried in the manner hereinbefore pointed out where the plea of insanity at the time of trial is filed, and, on being found true, the prisoner shall be disposed of in like manner." § 27-1504. See *Griffin* v. *State,* 195 *Ga.* 368 (2), 374 (24 S. E. 2d, 399). What is the meaning of the phrase, "there

to remain until discharged in the manner prescribed by law?" Whether or not it might under some circumstances include the general law as to habeas corpus, we think that, in any event, it would include certain statutory provisions, to be mentioned presently, with respect to the manner in which persons committed to the State Hospital may be discharged. 33 Words & Phrases (Perm. ed.), 413-415. It is declared in the Code: "Before or after admission of a pay patient, resident or nonresident, by certificate, the person alleged to be a lunatic, or his friend or relative, may make a demand of the superintendent for a trial of the question of lunacy by jury, which shall be had without delay, according to law, in the county of Baldwin." § 35-236. "The like demand and trial may be had by all patients who have been adjudged lunatics, if the person demanding it, being relative or friend, will make an affidavit that he believes the alleged cause of commitment did not and does not exist, and that the conviction was obtained by fraud, collusion, or mistake. The same right shall exist, when there shall be an affidavit that the cause of commitment has ceased to exist, and there shall be a refusal by the superintendent to discharge after demand made." § 35-237.

It is insisted by counsel that these provisions refer only to "pay patients," or to patients seeking release from "civil commitment." The section first quoted does refer in express terms to pay patients, but we think it equally clear that the procedure there described is made applicable by the next section to patients of all classes, whether pay or indigent, and however committed, and that the concluding clause of the latter section would apply specifically to one in the situation here alleged.

"Any person restrained of his liberty under any pretext whatever, or any person alleging that another, in whom for any cause he is interested, is restrained of his liberty or kept illegally from the custody of the applicant, may sue out a writ of habeas corpus to inquire into the legality of such restraint." Code, § 50-101. No person shall be discharged "where it appears that the detention is authorized by law." § 50-116 (6). The question to be determined in all such cases is the legality of the detention at the time of the hearing. *Sanders* v. *Paschal,* 186 *Ga.* 837 (199 S. E. 153); *Harris* v. *Norris,* 188 *Ga.* 610 (4 S. E. 2d, 840).

While the authorities may not be altogether in harmony on the

question as to whether the existence of other remedies will exclude habeas corpus, seemingly the weight of authority is to the effect that, where a person has been adjudged insane and committed to an institution, and thereafter seeks to be discharged upon the ground that his sanity has been restored, he can not invoke the writ of habeas corpus without showing that he has exhausted specific statutory remedies, where such are provided. The question is of course one of legislative intent, to be determined by construction of the particular statutes, where, as in this case, no constitutional question is involved. On the general subject, see 32 C. J. 673, § 323; Id. 683, 684, §§ 363, 366; 39 C. J. S. 437, 588-590, §§ 7, 48; 25 Am. Jur. 209, § 85; 28 Am. Jur. 680, §§ 37, 38; Id. 689, § 51; King v. McLean Asylum of the Massachusetts General Hospital, 64 Fed. 331 (26 A. L. R. 784); Byers v. Solier, 16 Wyo. 232 (93 Pac. 59, 14 L. R. A. (N. S.) 468); Martin v. Superior Court, 101 Wash. 81 (172 Pac. 257, 4 A. L. R. 572); Colvin v. Superior Court, 159 Wash. 335 (293 Pac. 986, 73 A. L. R. 555); Bradford v. Ragsdale, 174 Tenn. 450 (126 S. W. 2d, 327, 121 A. L. R. 1506); State v. Pritchett, 106 N. C. 667 (11 S. E. 357); Ex parte Drayton, 1 Desaussure Eq. (S. C.) 144.

A party might perhaps show some valid reason excusing failure to pursue a statutory remedy, even in a case where ordinarily he should pursue it. Compare *Loftis Plumbing &c. Co.* v. *Quarles,* 188 *Ga.* 404 (3 S. E. 2d, 725).

On proper construction of the instant petition, it is necessarily to be inferred that the petitioner left the hospital without leave, and that therefore his status and rights are analogous to those of an escape. *Williford* v. *State,* 121 *Ga.* 173 (48 S. E. 962); United States v. Nicholson, 102 Fed. 2d, 94. The Code, § 26-4512, declares: "Any person who shall aid or assist, or attempt to aid or assist, a patient who has been lawfully committed to the State Hospital, to escape therefrom, shall be guilty of a misdemeanor."

If the judge in this case had entertained the petition, his action would have had the effect of approving the petitioner's escape or departure from the institution without leave; whereas, if there were those who aided the petitioner in so leaving, they would be guilty of a misdemeanor.

Since the statute under which the petitioner was committed to the institution provides in express terms that he should there re-

main "until discharged in the manner prescribed by law," and since there was at the same time another statute (Code, § 35-237) which provides the method of discharge "when the cause of commitment has ceased to exist," and which was in force at the time the petition for habeas corpus was filed, we think that it was the intent of the General Assembly to require an inmate, or one acting in his behalf, to pursue the specifically provided remedy, at least so far as practicable, before resorting to the general law. In our opinion, therefore, the petition was fatally defective, in that it did not show that the applicant had pursued or attempted to pursue the latter specific remedy, or allege any reason for his failure so to do. In other words, the petition did not show that the alleged detention was unlawful, so as to make available the remedy of habeas corpus.

Let us suppose that, instead of being in the custody of the sheriff as he now is, the petitioner had remained in the hospital under the original commitment, and had while in that status filed a petition for the writ of habeas corpus against the hospital superintendent himself, with the same silence as here as to a previous demand for release or other effort to avail himself of the remedy prescribed by the Code, § 35-237. Could it be said that, because he could prove that his sanity had been restored, his detention had become illegal, even though he had made no sort of demand upon the superintendent? We think not; nor is he in better position because he has escaped from the institution, and seeks to prevent his return thereto.

The case bears some resemblance to *Kennedy* v. *Meara*, 127 *Ga.* 68 (56 S. E. 243, 9 Ann. Cas. 396), which involved the custody of a child that had been committed under a different statute to an institution for neglected children. It was held that the mother of the child could show that she had, since the commitment, become a fit person to have the custody of the child, and could maintain habeas corpus without first pursuing the remedy provided by the statute in such case. There are material differences, however, between that case and the present one, and the ruling that we make in the instant case does not conflict with that decision. The court there was dealing with the natural right of a mother to the custody of her child, and by a specific statute habeas corpus was an available remedy in such case. Code, § 50-121; Cobb's Dig.

335, Ga. L. 1845, p. 43. Nor had the mother sought the original commitment, as did the plaintiff here; on the contrary, the statute was applied adversely to her, and she thereafter sought the child's custody by habeas corpus. As to the natural right of a parent, and the strictness with which it is guarded, see *Miller* v. *Wallace*, 76 *Ga.* 479 (2 Am. St. R. 48); *Landrum* v. *Landrum*, 159 *Ga.* 324 (2) (125 S. E. 832, 38 A. L. R. 217); *Chapin* v. *Cummings*, 191 *Ga.* 408, 415 (12 S. E. 2d, 312).

The judge did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. Jenkins, P. J., Duckworth, Atkinson, and Wyatt, JJ., concur.*