S00A1537. HOGAN et al. v. NAGEL.
(543 SE2d 705)

FLETCHER, Presiding Justice.

We granted the application for interlocutory review in this habeas action to consider whether a person involuntarily committed to a mental health facility following an acquittal by reason of insanity must first exhaust remedies under the criminal procedure code before seeking habeas relief. Because the mental health code specifically permits an involuntary detainee to seek habeas relief "at any time," we conclude that exhaustion of remedies is not required and affirm the habeas court.

In 1981 David Nagel was acquitted of murder based on an insanity plea. A person found not guilty by reason of insanity must undergo a 30-day evaluation of his current mental health condition.

---

[16] See *Perkins,* 269 Ga. at 796; *Luallen,* 266 Ga. at 179.
[17] See *Rhodes v. State,* 264 Ga. 123-124 (441 SE2d 748) (1994).

Only if the trial court concludes that the defendant meets the civil commitment criteria set forth in Chapter 3 of Title 37 may the trial court order the defendant remanded to the custody of a mental health facility. Following Nagel's acquittal, the trial court concluded that Nagel met the standard for civil commitment and Nagel has been in a Georgia mental health facility since 1981. In 1991, Nagel sought release under OCGA § 17-7-131 (f).[1] Following the conclusion of those proceedings and federal habeas proceedings,[2] he instituted this habeas action in 1999. The appellants moved to dismiss the petition, contending that Nagel was first required to file another petition under OCGA § 17-7-131 (f).

OCGA § 37-3-148 (a) provides that the writ of habeas corpus is always available to challenge an illegal detention in a mental hospital; OCGA § 17-7-131 (f) provides that an insanity acquittee may only be discharged by the committing court under the procedures set forth in the code section and sharply limits the availability of these procedures. The reconciliation of these two provisions is "one of legislative intent, to be determined by construction of the particular statutes."[3]

OCGA § 37-3-148 (a) states that a person detained in a mental health facility may "[a]t any time and without notice . . . petition, as provided by law, for a writ of habeas corpus." The statute contains no express limitation on the provision that a person may petition for habeas corpus "at any time." In contrast, the broad provision "without notice" is limited by the rest of subsection (a), which requires that notice be given to the committing court when a petition is made for the release of a person acquitted by reason of insanity. The failure of the legislature to craft an exception to the time requirement when it created an express exception to the notice requirement is strong evidence that it did not intend any exception.[4]

The dissent asserts that the phrase "as provided by law" in OCGA § 37-3-148 (a) refers to the criminal procedure code. However, because the phrase modifies the clause "may petition for a writ of habeas corpus," it applies more logically to the law on habeas corpus than to the law on insanity acquittees. Thus, a person must follow the procedures set forth in title 9 regarding the contents and service of the petition for a writ of habeas corpus.[5] This interpretation is

---

[1] See *Nagel v. State*, 264 Ga. 150 (442 SE2d 446) (1994) (affirming the denial of relief).

[2] *Nagel v. Osborne*, 164 F3d 582 (11th Cir. 1999).

[3] *Richardson v. Hall*, 199 Ga. 602, 606 (34 SE2d 888) (1945).

[4] *Morton v. Bell*, 264 Ga. 832, 833 (452 SE2d 103) (1995) (recognizing principles of statutory construction, expressio unius est exclusio alterius (the express mention of one thing implies the exclusion of another) and expressum facit cessare tacitum (if some things are expressly mentioned, the inference is stronger that those omitted were intended to be excluded)).

[5] See OCGA § 9-14-1 et seq.

more logically sound than the dissent's assertion that the legislature relied upon the phrase "as provided by law" to craft an exhaustion of remedies requirement.

Additionally, the language in OCGA § 37-3-148 (a) requiring notice to the committing court was added in 1980 when OCGA § 17-7-131 provided, as it does today, that an insanity acquittee could be discharged only by the committing court.[6] The addition of this language in 1980 demonstrates the legislature's intent that the writ of habeas corpus should always be available to an insanity acquittee. Without the availability of the writ of habeas corpus, the state could detain a person for as long as 12 months under OCGA § 17-7-131 (f) when that person did not meet the standard for detention. Furthermore, the requirement of exhaustion would render the availability of habeas corpus relief meaningless because the 12-month time limit in OCGA § 17-7-131 (f) applies from the time of the hearing. If, for example, a court takes nine months to rule following a hearing pursuant to OCGA § 17-7-131 (f), a petitioner would have to complete the habeas process within three months or face a defense of failure to exhaust. The legislature no doubt recognized the substantial workload of the trial courts. Because a heavy workload could produce unfairness by delaying a ruling under OCGA § 17-7-131 (f), the legislature provided a remedy through the availability of habeas corpus relief at any time.

Finally, the availability of the writ of habeas corpus "at any time" avoids the due process concerns expressed by the Eleventh Circuit in *Benham v. Ledbetter*.[7] That case held that "refusal to accord habeas corpus relief to confinees who are able to prove at a habeas corpus hearing that they no longer meet the standards for commitment could not be defended under any principles of due process."[8] That court found it unnecessary to address the exhaustion question presented in this case "in view of the low likelihood that Georgia would deny all judicial relief to a person involuntarily confined to a mental hospital."[9] Thus, the court implicitly assumed that the state would not require exhaustion of remedies.

*Richardson v. Hall*[10] fails to support the dissent's position. In that case, there was no specific statute granting the availability of habeas relief. Here, OCGA § 37-3-148 (a) provides that habeas relief is available "at any time" to detainees such as Nagel.

Because the statutory scheme demonstrates the legislature's

---

[6] Ga. Laws 1980, p. 678 § 2 and Ga. Laws 1977, p. 1295 § 2.
[7] 785 F2d 1480 (1986).
[8] Id. at 1493.
[9] Id.
[10] 199 Ga. 602.

intent that the availability of the writ of habeas corpus not be restricted, we affirm the trial court's denial of the motion to dismiss.

*Judgment affirmed. All the Justices concur, except Sears, Carley, and Thompson, JJ., who dissent.*

CARLEY, Justice, dissenting.

The majority holds that Nagel has the right to seek discharge by way of habeas corpus without first proceeding under OCGA § 17-7-131 (f). In my opinion, that holding is based upon an erroneous failure to apply the applicable rules of statutory construction and a misinterpretation of applicable authority. The practical effect of today's decision is to make habeas corpus the exclusive remedy which will be used by an insanity acquittee to seek release from detention. If, as the majority now holds, such detainees have the unlimited option to select between habeas corpus relief and resort to the procedures provided by OCGA § 17-7-131 (f), few, if any, will elect to pursue the latter as it requires an appearance before the court that originally ordered the detention. I submit, however, that the committing court has the primary interest in insuring that one seeking release is no longer insane and will not again become a danger to the community. The majority deprives the committing court of this opportunity, and, contrary to the legislative intent, it makes the specific statutory remedy for insanity acquittees the exception rather than the rule. Therefore, I dissent.

Among those subject to involuntary detention in a mental health facility are non-criminal patients who are committed pursuant to OCGA § 37-1-1 et seq., the Georgia Mental Health Code, as well as criminal defendants, such as Nagel, who are found not guilty by reason of insanity. OCGA § 37-3-148 (a) provides, in part, that

[a]t any time and without notice, a person detained by a facility . . . may petition, as provided by law, for a writ of habeas corpus to question the cause and legality of detention and to request any court of competent jurisdiction on its own initiative to issue a writ for release. . . .

"Refusal to accord habeas corpus relief to confinees who are able to prove at a habeas corpus hearing that they no longer meet the standards for commitment could not be defended under any principles of due process." *Benham v. Ledbetter*, 785 F2d 1480, 1493 (IV) (D) (11th Cir. 1986). Thus, OCGA § 37-3-148 (a) is properly construed as a general statute, the substantive provisions of which apply equally to all involuntary patients without regard to whether the underlying basis for their commitment is civil or criminal. The only distinction is procedural, in that Nagel, who is being detained pursuant to OCGA

§ 17-7-131, would be required to serve a copy of his habeas petition upon the presiding judge of the Superior Court of Troup County "and the prosecuting attorney for such court, which service may be made by certified mail or statutory overnight delivery, return receipt requested." OCGA § 37-3-148 (a).

The general availability of habeas relief under OCGA § 37-3-148 (a) does not necessarily mean that an insanity acquittee does not have to comply with OCGA § 17-7-131 (f). As previously noted, OCGA § 37-3-148 (a) specifies that an involuntary patient has the right to petition for habeas, "as provided by law. . . ." The majority simply chooses to ignore this phrase, apparently misconstruing it as a limited reference to the law of habeas corpus and, thus, meaning only that a petitioner must follow the procedures set forth in title 9 regarding the contents and service of the petition for a writ of habeas corpus. However, *any* applicant for *any* form of judicial relief must comply with the applicable procedural requirements. Thus, the majority's unexpressed position that "as provided by law" refers only to compliance with the procedural provisions of title 9 is inconsistent with the fundamental principle of statutory construction that courts should interpret "language used by the General Assembly in a manner that will not render it . . . mere surplusage. [Cit.]" *State of Ga. v. C. S. B.*, 250 Ga. 261, 263 (297 SE2d 260) (1982). In *Richardson v. Hall*, 199 Ga. 602, 605 (34 SE2d 888) (1945), this Court construed similar statutory language providing that an insanity detainee was to remain in detention "until discharged in the manner prescribed by law," and held that

> [w]hether or not it might under some circumstances include the general law as to habeas corpus, we think that, in any event, it would include certain statutory provisions . . . with respect to the manner in which persons committed to the State Hospital may be discharged. [Cit.]

Therefore, the majority incorrectly opines that there is no express limitation on the right to file a habeas petition "at any time." I submit that such right is circumscribed to the extent the General Assembly otherwise provides with respect to the detention of insanity acquittees.

OCGA § 17-7-131 (f) is the law applicable to insanity acquittees, and it provides that such an acquittee "may only be discharged" by filing a petition for release in "the committing court in accordance with the procedures specified in this subsection. . . ." If release is denied, the detainee cannot file "a further release application" for 12 months after the hearing on the "last preceding application." Although OCGA § 37-3-148 (a) applies to all involuntary patients,

OCGA § 17-7-131 (f) is applicable only to insanity acquittees. Pursuant to the general enactment, Nagel is authorized to seek habeas relief because he is being detained involuntarily in a mental health facility, but the dispositive inquiry here is whether, as an insanity acquittee, he is entitled to pursue that remedy without *first* seeking discharge in accordance with the specific statute. As to that question,

> seemingly the weight of authority is to the effect that, where a person has been adjudged insane and committed to an institution, and thereafter seeks to be discharged upon the ground that his sanity has been restored, he can not invoke the writ of habeas corpus without showing that he has exhausted specific statutory remedies, where such are provided.

*Richardson v. Hall*, supra at 606. See also *Jackson v. Lowry*, 170 Ga. 755, 756-757 (154 SE 228) (1930) (holding that, so long as " 'the ordinary established procedure' " is available to a detainee, " 'the orderly procedure . . . should not be interfered with by a writ of habeas corpus [cits.]. . . .' "). Compare *Kennedy v. Meara*, 127 Ga. 68 (56 SE 243) (1906) (dealing with child custody and distinguished in *Richardson*, supra at 607). Thus, an insanity acquittee may not fail to pursue the available specific statutory remedy for discharge under OCGA § 17-7-131 (f), and instead file a habeas corpus petition pursuant to the general provisions of OCGA § 37-3-148 (a). Those two procedural avenues to release must be pursued consecutively, and not alternatively at the election of the insanity acquittee. An involuntary patient is entitled generally to seek habeas at any time and without notice, but the applicable law further provides that such a patient who is an insanity acquittee cannot obtain that relief unless the right to file an application for release in accordance with OCGA § 17-7-131 (f) is not available. By requiring service on the presiding judge of the committing court and the prosecutor, OCGA § 37-3-148 (a) insures that the habeas respondents, such as Appellants, can plead the availability of the specific statutory remedy as a defense in any habeas proceeding initiated by an insanity acquittee who has not applied for release initially under OCGA § 17-7-131 (f).

The majority does not even discuss *Richardson v. Hall*, apparently conceding by its failure to do so that that case is controlling authority which cannot be successfully distinguished. Nagel urges that it is distinguishable because a specific statute recognizes the availability to him of habeas relief. However, OCGA § 37-3-148 (a) does not specifically authorize habeas corpus relief for insanity acquittees. Compare *Kennedy v. Meara*, supra. As previously noted, it is a general statute which applies to all involuntary patients regard-

less of the basis upon which they were committed. The relevancy of *Richardson v. Hall* stems from the applicability here, as there, of a specific statute dealing with the detention of one charged with commission of a crime, but who was found to be insane. OCGA § 17-7-131 (f) provides that an insanity acquittee "may only be discharged" by complying with its provisions. Just as the word "only" in that statute does not negate the general applicability of OCGA § 37-3-148 (a), the phrase "at any time" in the latter provision does not foreclose the specific applicability of OCGA § 17-7-131 (f). If the General Assembly had intended that habeas corpus replace OCGA § 17-7-131 (f) as the remedy for insanity acquittees, then it would have repealed that statute. Instead, it amended OCGA § 37-3-148 (a) to require service of the habeas petition on the presiding judge and prosecuting attorney. Since both remedies were retained, we cannot simply ignore the requirement of the specific provisions of OCGA § 17-7-131 (f). Where, as here, the law provides both a specific remedy for release from detention and the general remedy of habeas corpus, the petitioner must pursue the former before he can seek the latter. *Richardson v. Hall*, supra.

Thus, the enactment of OCGA § 17-7-131 (f) as a statutory remedy specifically applicable to insanity acquittees represents an expression of the "intent of the General Assembly to require an inmate . . . to pursue [that] specifically provided remedy, at least so far as practicable, before resorting to the general law." *Richardson v. Hall*, supra at 607. In accordance with that legislative intent, the insanity acquittee who does not pursue the specific statutory remedy is not entitled to seek habeas relief, because he or she cannot "show that the alleged detention [is] unlawful, so as to make available the remedy of habeas corpus." *Richardson v. Hall*, supra at 607. This requirement that available remedies be exhausted is certainly not peculiar to Georgia, and applies equally to a petitioner "seeking extraordinary [habeas] relief in federal court. [Cits.]" *Kyle v. Hanberry*, 677 F2d 1386, 1391-1392 (II) (B) (11th Cir. 1982). In rejecting this requirement, the majority posits that,

> [i]f, for example, a court takes nine months to rule following a hearing pursuant to OCGA § 17-7-131 (f), a petitioner would have to complete the habeas process within three months or face a defense of failure to exhaust.

This statement is patently erroneous. Habeas is an equitable remedy. *Fullwood v. Sivley*, 271 Ga. 248, 251 (517 SE2d 511) (1999). The jurisdiction of an equity court is determined at the time the action is commenced, and the fact that a legal remedy subsequently becomes available will *not* oust the court of jurisdiction unless the statute cre-

ating the legal remedy expressly provides otherwise. 27A AmJur2d, Equity, § 33, p. 542. That is the rule in Georgia. "[E]quity, having first acquired jurisdiction, will retain it to the exclusion of all other courts, and for all other purposes. [Cits.]" *Gay v. Crockett*, 217 Ga. 288, 291 (122 SE2d 241) (1961). Thus, contrary to the majority's "example," the habeas court certainly would not be ousted from jurisdiction 12 months after the OCGA § 17-7-131 (f) hearing. Rather, the OCGA § 17-7-131 (f) court would have no jurisdiction until the conclusion of the habeas action. The majority's mistaken belief as to the jurisdictional consequences leads it to an erroneous rejection of the principle of exhaustion of available remedies.

Nagel cites *Benham v. Ledbetter*, supra, as authority for the majority's interpretation. There, the Eleventh Circuit expressed concern that, "*during the twelve months between release petitions*, the insanity acquittee has no clear avenue, under the Georgia statutory scheme for release." (Emphasis supplied.) *Benham v. Ledbetter*, supra at 1492 (IV) (D). In view of that procedural uncertainty, the issue to be decided was stated as "the availability under Georgia law of habeas corpus relief to an insanity acquittee who is denied release *during the subsequent twelve months before the committing court may hear a petition for release*." (Emphasis supplied.) *Benham v. Ledbetter*, supra at 1492 (IV) (D). Thus, the *Benham* court recognized that, in accordance with the principle of statutory construction enunciated in *Richardson*, a Georgia insanity acquittee would be *required* to comply with OCGA § 17-7-131 (f), if that remedy was *available*, before seeking habeas relief. The sole question presented for decision was whether such an involuntary patient had *additional* recourse to habeas during the year in which he could not pursue that statutory remedy. In answer to that question, the Eleventh Circuit correctly concluded that the failure of OCGA § 37-3-148 (a) to extend the habeas remedy expressly to detainees found not guilty by reason of insanity "does not require a conclusion that the legislature intended by silence to deny insanity acquittees the right to seek habeas . . . corpus. . . ." *Benham v. Ledbetter*, supra at 1492 (IV) (D). As habeas *is* available during the 12-month interval when OCGA § 17-7-131 (f) is not, the insanity acquittee who seeks habeas relief during that period need not "allege and prove some valid reason for failing to comply with the statutory release procedures." *Benham v. Ledbetter*, supra at 1492 (IV) (D). Habeas is available to that insanity acquittee as a matter of constitutional law, because "[t]he writ of habeas corpus shall not be suspended unless, in case of rebellion or invasion, the public safety may require it." Ga. Const. of 1983, Art. I, Sec. I, Par. XV. Thus, *Benham* is clearly distinguishable and, in fact, constitutes implicit authority for dismissal of the habeas proceedings in this case, "in that [the petition] did not show that [Nagel] had pur-

sued or attempted to pursue the latter specific remedy, or allege any reason for his failure so to do." *Richardson v. Hall*, supra at 607. The majority contends, however, that *Benham v. Ledbetter*, supra at 1493, is authority for a contrary holding, citing the Eleventh Circuit's "view of the low likelihood that Georgia would deny all judicial relief to a person involuntarily confined to a mental hospital." The majority misconstrues this statement. This state does not deny "all" such relief to an insanity acquittee. Nagel has the initial right to apply for release under OCGA § 17-7-131 (f) and if he loses, then, as the court in *Benham v. Ledbetter* opined, he has the subsequent right to petition for habeas corpus relief within the 12-month period following his unsuccessful hearing in the committing court. Contrary to the majority's contention, nothing in *Benham* purports to assume implicitly that this state would not require the detainee to pursue his statutory remedy, if available, before invoking his habeas remedy. As noted, the implicit assumption was that the insanity acquittee would proceed under OCGA § 17-7-131 (f) if he could do so.

Nagel maintains that enforcement of the exhaustion of remedies requirement will diminish the effectiveness of habeas corpus as a means by which he can seek release. However, neither the federal nor state constitutions provide that insanity acquittees should have unlimited access to the habeas procedure, but require only that they have some available means of seeking release from detention. See *Benham v. Ledbetter*, supra at 1493 (IV) (D). " 'The fundamental idea of due process is notice and an opportunity to be heard. (Cit.) Due process (does not guarantee) a particular form or method of state procedure. (Cit.)' [Cit.]" *Hood v. Carsten*, 267 Ga. 579, 580 (481 SE2d 525) (1997). Thus, Nagel's constitutional rights are not violated simply because his standing to seek habeas depends upon the unavailability of the statutory remedy. *Richardson v. Hall*, supra at 606. As an insanity detainee, he always has recourse to *some* procedure for seeking his release, but it does not always take the form of a petition for habeas corpus. The majority asserts that requiring an insanity acquittee to exhaust his remedy under OCGA § 17-7-131 (f) renders the availability of habeas corpus relief "meaningless." The support cited for this assertion is the intimation that the committing court that hears the application will delay its ruling and leave the insanity acquittee with only a short time within which to seek habeas corpus relief. However, an appellate court *must* presume that trial courts perform their official duties. See *Gunter v. State*, 243 Ga. 651, 654 (1) (256 SE2d 341) (1979). " 'The presumption is in favor of the regularity and legality of all proceedings in the court below. [Cit.]' [Cit.]" *Bridges v. State*, 227 Ga. 24 (2) (178 SE2d 861) (1970). This presumption extends to the trial court's compliance with any applicable requirements for ruling in a timely fashion. See OCGA § 15-6-21

(motions). Thus, the majority incorrectly predicates its interpretation of the statutes upon an unwarranted assumption that a committing court will delay its ruling so as to frustrate the insanity acquittee's right to seek habeas corpus. The rules of statutory construction forbid engaging in a subtle or forced interpretation for the purpose of either limiting or extending an enactment's operation. *Sliney v. State*, 260 Ga. 167, 168 (391 SE2d 114) (1990). Construing the two statutes in accordance with the proper rules requires a holding that the detainee must first apply for release under OCGA § 17-7-131 (f) and, if unsuccessful, he is then free to appeal or, within one year of the hearing on his application, to file a habeas petition. Nagel further urges that the doctrine of collateral estoppel militates against enforcement of OCGA § 17-7-131 (f) as a prerequisite to the availability of habeas relief. He contends that an adverse ruling by the committing court will bar subsequent habeas relief, thereby extinguishing the right to seek that relief for all practical purposes. However, " '[t]he only question on habeas corpus is the legality of the detention *at the time of the hearing.*' [Cits.] 'The writ of habeas corpus looks only to the validity of the present confinement. . . .' [Cits.]" (Emphasis supplied.) *Balkcom v. Craton*, 220 Ga. 216, 218 (138 SE2d 163) (1964). For any involuntary patient, the legality of the *present* confinement is dependent upon his *current* mental status. See *Strickland v. Peacock*, 88 Ga. App. 384, 385 (2) (77 SE2d 20) (1953). This is the same issue which the committing court must determine when an insanity acquittee seeks discharge pursuant to OCGA § 17-7-131 (f). Regardless of whether the determination to continue the confinement is made by a habeas court or the committing court, the unsuccessful detainee has a right to seek appellate review. Thus, a committal court's unreversed denial of a petition for release under OCGA § 17-7-131 (f) will preclude an insanity acquittee only from relitigating the *same* issue in a subsequent habeas proceeding. "Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866-867 (2) (463 SE2d 5) (1995). In that regard, however, an insanity acquittee is in the same position as other involuntary patients who cannot use a successive habeas proceeding to *relitigate* the issue of their sanity. See *Cotton v. Smith,* 225 Ga. 680 (171 SE2d 122) (1969). Any subsequent habeas action must relate to the *then current* mental condition of the petitioner, and does not involve his mental condition at some earlier time. Thus, the denial of an insanity acquittee's petition for release under OCGA § 17-7-131 (f) establishes only that he or she is not *then* entitled to discharge. That ruling will not preclude the detainee from filing a subsequent habeas application during the ensuing 12-month period,

alleging that his *current* mental condition renders the present confinement unlawful.

Enforcement of the principle of exhaustion of available remedies does not deny an insanity acquittee recourse to the habeas remedy authorized by OCGA § 37-3-148 (a), but it does require that he comply with the mandate of OCGA § 17-7-131 (f) and pursue that statutory remedy first. If he does and the committing court denies his application for discharge, he cannot invoke that procedure again for a year. During that period when the statutory remedy is unavailable to him, however, he may file a habeas petition and seek release on the ground that his mental condition at that time is such that his present detention is unauthorized. Because Nagel did not exhaust his available specific statutory remedy for release, the habeas court erred in denying Appellants' motion to dismiss the petition. *Richardson v. Hall*, supra. The result of today's opinion is to perpetuate that error and to render OCGA § 17-7-131 (f) a mere relic. Because that result is not only unwarranted, but also unauthorized under applicable authority, I dissent.

I am authorized to state that Justice Sears and Justice Thompson join in this dissent.

DECIDED MARCH 2, 2001—
RECONSIDERATION DENIED APRIL 5, 2001.

*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Robert G. Nardone,* for appellants.
*Torin D. Togut, Debra Blum, James C. Bonner, Jr.,* for appellee.