### In the matter of Russell, a lunatic.

A person proceeded against as a lunatic, except in cases of confirmed and dangerous madness, is entitled to reasonable notice of the time and place of executing the commission, and a reasonable time to produce his witnesses before the jury. But it is not necessary that notice should be served on him personally where it is evident he keeps out of the way to avoid service of the notice.

The jury, upon the execution of a commission of lunacy, have a right to inspect and examine the lunatic; and they should do so, in every case of doubt, when practicable.

In such cases they should direct the person in whose custody the lunatic is, to produce him, or to permit him to attend before them. And when such an order is made, either by the court or by the commissioners, the person who prevents the attendance of the lunatic before the commissioners and jury will do it at his peril.

This court has a right to discharge an inquisition of lunacy, upon a mere examination of the alleged lunatic, in connection with the evidence produced before the jury; without subjecting him to the expense of an issue or a traverse, where upon such an examination and evidence it is evident that the jury erred.

But where no change has taken place in the situation of the lunatic, since the execution of the commission, it must be a very clear case of mistake, or of undue prejudice, on the part of the jury, to authorize the court to do so.

The court will not discharge an inquisition upon *ex parte* affidavits, contradicting the finding of the jury, without any excuse being given for neglecting to produce the deponents as witnesses before the commissioners.

Although it is not a matter of course to allow a feigned issue in a lunacy case, when

In the matter of Russell.

asked for, it is proper to allow it whenever the court entertains a reasonable doubt as to the justice of the finding of the jury, upon the execution of the commission.

THIS case came before the chancellor upon an inquisition finding P. Russell to be a lunatic, and upon the petition of one of his sons, on whose application the commission was issued, to have a committee of his person and estate appointed. A counter application was made on the part of Russell to have the inquisition set aside for irregularity, or for leave to traverse, or for a feigned issue to try the question of lunacy.

*J. Holmes*, for the original petitioner.

*J. D. Willard*, for the alleged lunatic.

THE CHANCELLOR. There is no irregularity in the proceedings, which can justify the court in setting aside the inquisition on that ground. The alleged lunatic, except in cases of confirmed and dangerous madness, to be judged of and provided for by the court, in the order for the commission, is entitled to reasonable notice of the time and place of the execution of the commission, and a reasonable time to produce his witnesses before the jury, to rebut the charge of lunacy. It is not necessary, however, that the notice should be served on him personally, where it is evident he keeps out of the way to prevent the service of notice of the execution of the commission. Here the notice was served at the place where Russell made it his home, and also at the several places where he would be most likely to receive it. And the evidence produced before the commissioners was sufficient to establish the fact that he must have been aware of the existence of the notices which had been left at those places for him, or of some of them. The jury also have the right to inspect and examine the lunatic; and they should do so in every case of doubt, where such an examination can be had. And in such cases the commissioners should direct the person in whose custody the lunatic is, to produce him, or to permit him to attend upon the execution of the commission.

In the matter of Russell.

Where such an order is made, either by the court, or by the commissioners without a previous direction of this court, the person who prevents the attendance of the lunatic before the commissioners and jury will do it at his peril.

I have no doubt of the right of the court to discharge an inquisition of lunacy upon the mere examination of the supposed lunatic, in connection with the evidence produced before the jury, without subjecting him to the expense of an issue or a traverse; where upon such examination and proof it is perfectly evident that the jury erred in finding him to be a lunatic. (*In Re Heli*, 3 *Atk*. 635.) But to authorize the court to dispose of the case thus summarily, where there has been no change in the situation of the alleged lunatic subsequent to the finding of the inquisition, it must be a very clear case of mistake or undue prejudice on the part of the jury. It is also improper, in a case of this kind, to discharge the inquisition upon ex parte affidavits contradicting the finding of the jury; where there is no reasonable excuse given for the neglect to produce the deponents before the commissioners, and the jury, for examination as witnesses. The present is therefore not a proper case for the discharge of the inquisition upon this hearing, and without a traverse.

The only remaining questions, therefore, are whether the alleged lunatic should be permitted to traverse the inquisition, and if so, upon what terms and conditions; or rather, whether a feigned issue should be awarded to try the question of insanity, which is the form in which the question is tried, in a court of law, by our practice. Although it is not a matter of course to allow a feigned issue if it is asked for, it is proper to allow it wherever the court entertains a reasonable doubt as to the justice of the finding of the jury, upon the execution of the commission. In the case under consideration I have not only read the testimony upon which the inquisition was founded, but have also examined the party proceeded against, in relation to the particular subject upon which he is supposed to be insane. For it is admitted by the counsel for the petitioners, that the testimony produced upon the execution of the commission did not

establish a case of general insanity.    The mental alienation, if
any, in this case, is of that character to which Professor Esquirol
has given the modern name of *monomania*, or partial insanity,
as distinguished from *polymania*, or general mental alienation.
In this species of insanity the delusion of the mind is confined
to a particular subject, or an isolated train of ideas; and which
some medical writers suppose leaves the intellect unaffected in
other respects.    Because persons thus afflicted frequently appear
perfectly rational on all other subjects, both in their conversa-
tion and actions.    But persons in this situation frequently be-
come passionate, and even dangerous, when the train of their
particular delusion has been touched; so that for a time they
may exhibit all the fury and violence of raving maniacs.    It is
very difficult, therefore, as Sir Matthew Hale very justly ob-
serves, to define the invisible line which divides perfect from
partial insanity.    Where the particular subject of the insane
delusion, or monomonia, connects itself, however, with the dispo-
sition or management of the property of the person who is thus
afflicted, he is a proper subject of a commission of lunacy.    For
his unsoundness of mind renders him incompetent to manage
or dispose of his property with reason and judgment.    (*Dew* v.
*Clark*, 3 *Addams' Eccl. Rep.* 79. 1 *Hagg. Eccl. Rep.* 311,
*and* 5 *Russ. Rep.* 163, *S. C.*)

In the case under consideration, the monomonia or insane de-
lusion, if it be such, assumes the form of a fixed and abiding
idea, in the mind of Mr. Russell, that his wife, who has nearly
reached the age of sixty, and who is the mother of a large family
of grown up children, has for the last two or three years been
carrying on a criminal intercourse with a member of the church
to which she belongs.    And the effect of this strange and unac-
countable delusion has been to sever the ties of affection and of
nature which once attached him to his wife and children, and
to cause him to sell his homestead and other property, with
a view to the final abandonment of his family and his home.
The evidence upon the execution of the commission, if the facts
there stated were the only grounds upon which his settled con-
clusion of his wife's guilt was based, showed that such a conclusion

In the matter of Russell.

was not only unfounded, but was so clearly absurd and irrational as to be attributable only to the insane delusion of a diseased intellect. In my private examination, therefore, I have endeavored to ascertain the origin of his delusion on this subject, and to trace down the consecutive series of his actions and associations of ideas on the particular subject of his supposed mental alienation; but without arriving at a satisfactory conclusion whether the opinion which has fixed itself in his mind is merely the result of false reasoning from facts which could not justify such a conclusion, or whether the supposed facts, as well as the erroneous and absurd conclusions based thereon, were not the mere creations of an impaired intellect. It is therefore a proper case for the awarding of a feigned issue.

An issue must be made up and tried, at the circuit in Rensselaer county, to determine the question whether Mr. Russell is of unsound mind, so as to be mentally incapable of governing himself or of managing his property and affairs. And the only con dition which I shall annex to the order is that he shall attend personally upon the trial of the issue, and submit to such examination before the jury as the judge who tries the issue shall think proper to direct. In the meantime it may be referred to Master Kellogg to report a proper person as the committee, to take charge of such parts of Mr. Russell's estate as it is necessary to preserve from loss. And such committee is to take charge of the moneys now in possession of the alleged lunatic, and pay out of the same what is necessary for his board and clothing, and such reasonable sums as may be requisite to procure the attendance of witnesses upon the trial, and for the employment of proper counsel for him before the court and jury.