Okey, J.
Under the territorial government, jurisdiction to hold inquests concerning persons alleged to be insane-was vested in the judge of probate. 1 Chase, 127,191,339. By the act of 1805, the jurisdiction was vested in the court of common pleas. 1 Chase, 489. In 1815 it was transferred to justices of the peace (2 Chase, 869), where it remained,, except as to non-residents (2 Chase, 1009), until 1838, when it was vested ip the associate judges. 1 Curwen, 407. In the proceeding under all these statutes, the question of sanity was tried by a jury, consisting, in some instances, of five men; in others of seven men; and in still others of twelve men. It was analogous to a commission in the English practice and the practice of many states.
In 1850 the ancient feature of the proceeding — the determination of the question by a jury — ceased to exist in this state; but the effect of the adjudication remained the-same. By a statute passed in that year, the power to hold such inquests was vested in two justices of the peace. They were required to hear evidence, and set forth in writing whether the person complained of was sane or insane,, and the history of the case as developed in the evidence.. 2 Curwen, 1554.
While the act of 1850 was in force, jurisdiction was conferred by the act of 1852 (3 Curwen, 1717) on the probate-court “ in inquests as to lunatics, insane persons, and idiots;” and by the probate code of 1853 (3 Curwen, 2041),. re-enacted in 1854 (4 Curwen, 2630), exclusive jurisdiction was conferred on that court “to make inquests respecting-lunatics, insane persons, idiots, and deaf and dumb persons, subject by law to guardianship.”
The act of 1850 was repealed in 1856 (4 Curwen, 2740),. *396 .and the latter act remained in force, except as modified by ■other acts (see 67 Ohio L. 43), until 1878, when it was repealed and re-enacted. 75 Ohio L. 64.
The act of 1856 provided that before any person can be admitted into an insane asylum, the judge of the probate court “ shall proceed to examine the witnesses in attendance, and if, upon hearing of the testimony, such judge .shall be satisfied that the person so charged is insane,” proper steps shall be taken for his admission to such asylum. The finding, it will be seen, was- in effect the same as where a guardian was appointed. §§ 41, 63. It was an .adjudication concerning the status of a person by a court clothed with jurisdiction, and, except as otherwise provided by statute, the record imported absolute verity that he was then a proper person to be confined in an insane asylum. Shroyer v. Richmond, 16 Ohio St. 455. And, while the proceeding in this state differs from an inquisition of lunacy in the English practice and- in the practice of many states (Shelford on Lunatics, ch. 4; 2 Barbour’s Ch. Pr., book 5, ch. 6), the effect of the inquest, as to the matter now before us, is the same.
Inquisitions of this sort have been admitted in evidence in numerous cases, some of which were between private parties, and others concerned the public. 1 G-reenleaf’s Ev., § 356; 2 lb., § 371; Ereeman on Judgments, § 606; Banker v. Banker, 63 N. Y. 409 ; McGinnis v. Com., 74 Pa. St. 245; Lancaster Co. Nat. Bank v. Moore, 78 Pa. St. 407. In 2 Phillipps’ Ev. *266, it is said : “ An inquisition of lunacy is evidence on the trial of an indictment to show that the prisoner was insane when he committed the offense.” To the same effect is Sharswood’sStarkie’s Ev. 407*; Shelford on Lunatics, 74.
Inquests of this .character are analogous to proceedings in rem, affecting the general and public interest, and no one can strictly be regarded as a stranger to them. And such condition of things as the insanity of a party being shown, there is a presumption of more or less force, according to circumstances, that the same condition continued. Nor *397 does the time which may have elapsed since the inquest was. held affect the question of its admissibility (Sergeson v. Sealy, 2 Atkyns, 412), though, of course, it may have great force on the question of the weight of the evidence,
Ordinarily, such inquisitions are not conclusive, but only prima facie evidence of incapacity, as will be seen from the authorities cited; but, on a question like that in issue here, it is manifest they can not be regarded as even prima fade evidence. A person who is a fit subject for confinement in an insane asylum does not necessarily have immunity from punishment for crime; and the length of time between confinement in the asylum and the commission of the act charged, the nature of the crime, and other facts, may render such inquisition of little weight as evidence; but its weight is for the jury in each ease.
The only criminal case cited by Phillips, in support of the passage quoted from his work, is Rex v. Bowler. That was a case tried before Gibbs, G. J., and Le Blanc, J., at Old Bailey, in June, 1812. It is fully stated in 3 Starkie’s Ev., pt. 4, p. 1704*, and Shelford on Lunatics, 590. An-inquest of lunacy was offered and admitted; but the defendant was convicted and executed, and it is manifest, from the reports of the case, that the record was admitted as evidence merely tending to prove insanity.
Leggate v. Clark, 111 Mass. 308, is supposed to be an authority against the competency of the evidence. In that case, it appears that the proceedings of the judge of probate, committing Leggate to an insane hospital, was admitted in an action involving the validity of a deed which he had executed, as prima fade evidence of insanity. The Supreme Court reversed the judgment, on the ground that while the record of a proceeding for the appointment of a guardian for an insane person would be admissible in such a case, the order in question was not admissible, as it “ is not designed to fix his status.” But, as we have seen, a probate judge in this state is required to make, on hearing, precisely such an adjudication as is proper and sufficient in case of the appointment of a guardian, and. *398 hence the adjudication determines, to this extent, the status of such person.
In that case, some stress is placed on a provision, in the statute, requiring notice to the supposed lunatic. In England, where there is the right to traverse, it seems notice is not required, though Mr. Shelford remarks: “It seems extraordinary that such a rule as this should still prevail.” Shelford on Lun. 131 (v.) But in this country, notice to the supposed lunatic, in some form, has been generally regarded as indispensable, with whatever view the inquest may be held; and it has been said that “ the benignant principles of the common law would require the notice to be given.” Allis v. Morton, 4 Gray, 63; Matter of Tracy, 1 Paige, 580; Matter of Pettit, 2 Paige, 174; Matter of Russell, 1 Barb. Ch. 38; Lackey v. Lackey, 8 B. Monroe, 107. I do not-see why the finding would be any the less in the nature of an adjudication in rem, from the mere fact that notice is expressly provided for. But the court was simply giving a construction to the statutes of that state, with the provisions of which I am- not very familiar, and doubtless the decision rests on satisfactory grounds.
Our attention has been called to the fact that in The State v. Turner, Wright, 20, a coroner’s inquest, offered by the state, was excluded. We have no doubt the decision was correct for the reason given, and others. A coroner’s in•quest with us is of such a nature, that .to admit it, against the objection of the accused, would violate that clause of the bill of rights which entitles him to meet the witnesses face to face. The decision in no way affects the question in this case.
Insanity seems to be a defense amply provided for by .-statute in this state. It may be relied on, before indictment, by one charged with crime, after indictment and before trial on the merits, and on the final trial. 74 Ohio L. 87, 103. In this day, when the tendency is to admit rather than exclude testimony, we should hold this evi■denee admissible if the question could be regarded as doubtful; but its competency rests on substantial grounds. The inquest may have been held in another state, or other facts *399 may render it difficult to produce the oral testimony. Persons who are not to some extent deranged are rarely ■sent to an asylum. The danger that the evidence will have undue weight is small. The fact that the accused was confined in an asylum is confessedly competent evidence in his favor; and he may offer proof of the insanity of.his kindred. In Blackburn v. The State, 23 Ohio St. 146, where it -was claimed that the deceased came to her death by suicide, this court held that evidence to show that six years previous to her death she was of a melancholy condition of mind, and predisposed to, and threatened to, commit suicide, was competent. Does not the evidence offered in this case rest on even more satisfactory ground ? However that may be, we think the evidence offered and excluded was competent, as tending to prove the defense relied on. The physician’s certificate could not properly be admitted, but the bill of exceptions, fairly construed, discloses only an offer of the adjudication, showing that on December 5, 1874, "Wheeler was so far insane as to be a proper subject for confinement in an insane asylum, and the official return showing his actual confinement.
Judgment reversed, and cause remanded for a new trial.