STRICKLAND *v.* PEACOCK, Superintendent; *et vice versa.*

No. 18170. ARGUED APRIL 13, 1953—DECIDED MAY 11, 1953.

*Grady C. Pittard,* for plaintiff in error.

*Coogler & Kemp* and *Lester Dickson,* for parties at interest, not parties to record.

*Eugene Cook, Attorney-General, M. H. Blackshear Jr., A. J. Hartley, Deputy Assistant Attorneys-General, George E. Sims Jr.* and *Lamar W. Sizemore, Assistant Attorneys-General,* contra.

ALMAND, Justice. The Court of Appeals (in cases 34408 and 34409) certified to this court for answer the following questions:

"1. Were Code §§ 35-236 and 35-237 of the Code of 1933 repealed by the act of 1947, Georgia Laws, 1947, pages 1174-1177, No. 315 (Senate Bill No. 73)?

"2. If the first question is answered in the negative, does the Court of Ordinary of Baldwin County, Ga., have jurisdiction to try the question of the lunacy of a person who has been committed to the Milledgeville State Hospital?

"3. If the first question is answered in the negative and the second in the affirmative, does the Court of Ordinary of Baldwin County have authority and jurisdiction to submit the question of the lunacy of a person who has been committed to the Milledgeville State Hospital to a jury?"

The act of 1947 (Ga. L. 1947, p. 1174) does not in express terms repeal Code §§ 35-236, 35-237, and consequently, if these two sections have been repealed by that act, it must be because the act operates as an implied repeal. Repeals by implication

are not favored, and "an implied repeal arises from the enactment, the terms and necessary operation of which can not be harmonized with the terms and necessary effect of the earlier act. 'There must be a positive repugnancy between the provisions of the new law and those of the old.' Wood v. U. S., 16 Pet. 342, 362 (10 L. ed. 987); *Branch Bank* v. *Kirkpatrick,* 5 *Ga.* 34, 37. The necessary implication of repeal must be so strong that it is equivalent to an express repeal. *City of Atlanta* v. *Gate City Gas Lt. Co.,* 71 *Ga.* 106, 122." *Griggs* v. *City of Macon,* 154 *Ga.* 519, 527 (114 S. E. 899). In order to bring about a repeal by implication, the legislative intent must be ascertained from the words of the act. *Britton* v. *Bowden,* 188 *Ga.* 806 (1) (5 S. E. 2d, 47).

The caption to the act of 1947 states that the act is to "provide means whereby restoration to sanity and capacity may be established by judgment of the Court of Ordinary," and provides for the procedure in such cases. Section 1 provides that "any person who has been restored to sanity and capacity after having been adjudged a lunatic or a person of unsound mind may, personally or by attorney, petition the Ordinary of the county in Georgia where such person legally resides, setting forth the facts and praying for a judgment of restoration to sanity." Section 2 provides that, upon the filing of the petition, the ordinary shall issue a commission directed to three persons having the qualifications set out in Code § 49-604, which is a commission composed of two physicians and one attorney, upon proof that ten days' notice of such application has been given to the three nearest adult relatives of such person, if there be that many in the State. Sections 3 and 4 provide for a meeting of the commission and the taking of testimony, and their duty to return their findings to the ordinary within thirty days as to the mental condition of the applicant, with the right of appeal to the superior court by any dissatisfied party, where the issue shall be submitted to a jury. Section 7 provides that, where such finding by the ordinary, or verdict and judgment of the superior court, becomes final, such shall be conclusive on the issue of the restoration to sanity, and that "if restoration is so established, such person shall be deemed sane and capable of managing his or her property as of the date [of] the judgment of the court

upon the issue of restoration to sanity. In each case where restoration to sanity is so established the guardian, if any, shall forthwith deliver over to such person whose sanity and capacity has been established, such person's property, money and effects." Section 8 contains an express repeal of Code §§ 49-609 and 49-610. Section 9 repeals "all laws and parts of laws in conflict with this law."

These two repealed Code sections provided that any person for whom a guardian has been appointed, upon restoration to sanity and capacity, could petition the ordinary for the purpose of having the guardianship ended. If the ordinary was not satisfied as to the truth of the petition, or if the guardian or any relative of the applicant objected to a revocation of the letters of guardianship, the ordinary was required to summon eighteen men competent to serve as jurors, any twelve of whom should constitute a jury before whom would be tried the issue as to the truth of the application; and if their verdict affirmed its truth, the ordinary was required to grant an order discharging the guardian. It will thus be seen that the primary purpose of the act of 1947 was to repeal Code §§ 49-609, 49-610, which only provided how a person for whom a guardian had been appointed could, upon restoration to sanity, obtain a dismissal of the guardian, and to give the right to a person who had been restored to sanity to obtain an order declaring that his sanity had been restored, and in the same proceeding, upon obtaining such declaration, to have his guardian discharged. Prior to the act of 1947, there was no statutory provision as to how or in what manner a person who had been discharged from a mental institution could obtain an order declaring him to be sane. This act does not in any way attempt to deal with a person who is an inmate of the State mental institution who has been committed thereto under a commitment of the court of ordinary, or to provide a procedure for discharge from the hospital. Said act provides that the person himself may institute the proceeding, and it is apparent that it only applies to those persons who have been adjudged to be lunatic or of unsound mind who at the time of making the application, are not in the custody of the institution to which they were committed.

Turning now to the provisions of §§ 35-236, 35-237—the first

section provides that before or after the admission of a pay patient to the State hospital, the person alleged to be a lunatic, or his friend or relative, may make a demand upon the superintendent for a trial upon the question of lunacy before a jury, according to law, in the county of Baldwin. The next section gives the same right to a person who has been adjudged to be a lunatic to make such demand by making affidavit "that he believes the alleged cause of commitment did not and does not exist, and that the conviction was obtained by fraud, collusion, or mistake." This section also gives such patient the right to make the demand, where "there shall be an affidavit that the cause of commitment has ceased to exist, and there shall be a refusal by the superintendent to discharge after demand made."

The provisions of these sections were placed in the Code of 1863 by the Code Commissioners as sections 1304 and 1305. The codifiers, as will be shown hereinafter, in drafting these sections were perhaps influenced by the act of 1857 (Ga. L. 1857, p. 123), and the provisions of 2 & 3 Edw. VI, ch. 8, sec. 6 (Vol. 5, St. at Large, pp. 301, 302), enacted by the English Parliament in 1548. At the time these sections were written into the Code of 1863, a person could become an inmate of the State asylum who was a lunatic, and such lunatics were divided into four classes: (1) pay or pauper patients, residents of this State; (2) pay patients, being non-residents; (3) insane penitentiary convicts; (4) insane negroes, in certain cases. Pay and non-pay patients could only be admitted by certificate of the committing authority, or upon certificate of three respectable practicing physicians. §§ 1297-1300 inclusive. Under § 1815 of the same Code, it was provided that, where there was no guardian for an insane person, or the guardian refused or failed to confine his ward, any person apprehending injury to himself or his property from such insane person could complain to one of the justices of the inferior court of the county, upon which a warrant should issue, and upon investigation such court could either commit such person to the lunatic asylum or to the common jail, or accept a bond from his friends for his good behavior. The compilers of the Code of 1873 left out of this section (then § 1855 of the Code of 1868) the words "Justices of the Inferior Court of the County," and inserted in lieu of these words "the Ordinary." Code of 1873,

§ 1864. In substance, this section as amended is now embodied in the Code of 1933 as § 49-612.

It will thus be seen that the purpose of §§ 35-236 and 35-237 was to give a person who had been delivered to the State hospital as a lunatic, at the time of his admission or after his admission, an opportunity to have a hearing before a jury on the question of his sanity, and thus afford him due process of law on the question of whether· he was sane or insane. These two sections do not in any wise deal with the question of a lunatic's right to have an order of court restoring him to sanity, or the removal of guardianship, on account of his restoration to sanity. They deal solely with providing a remedy for one who has been committed to the State hospital, and who is in the custody of the superintendent of the hospital, to be discharged. Such discharge in itself would not operate to remove a guardian, if one had been appointed for his person or property. We have found only two cases in the appellate courts of this State where these Code sections were involved, and then only indirectly. In *Richardson* v. *Hall,* 199 *Ga.* 602 (34 S. E. 2d, 888), the plaintiff sought by habeas corpus his release from the custody of the Sheriff of DeKalb County. He had been previously committed to the State hospital by reason of insanity, but the petition did not allege that he had been formally discharged from that institution. This court held that, in view of the sections of the Code now under consideration, he had an adequate remedy, and could not maintain habeas corpus proceedings for his release. In *Tucker* v. *American Surety Co. of New York,* 78 *Ga. App.* 327 (50 S. E. 2d, 859), it appeared that the plaintiff, while an inmate of the Milledgeville State Hospital, had obtained her release by the Court of Ordinary of Baldwin County under these sections, and thereafter in that county brought a suit in her own name against the surety on a guardian's bond. It was held that, since she had a guardian, she could not maintain the suit in her own name, and further that the judgment in her favor as to her discharge did not automatically discharge the guardianship.

It is our opinion that Code §§ 35-236 and 35-237 were not repealed by the act of 1947, these sections operating upon a subject matter and providing a remedy that is not dealt with in that act. Our answer to question number 1 is that the act of 1947 did not repeal Code §§ 35-236 and 35-237.

■ Code § 35-236 provides that trial of the question of lunacy by a jury shall be according to law, in the county of Baldwin, but neither this section nor § 35-237 expressly states what court would have jurisdiction to try this question. At the time the Code of 1863 was adopted, courts of ordinary had authority to exercise original, exclusive, and general jurisdiction over issuing commissions of lunacy, and all other matters and things pertaining or relating to the estates of lunatics. Code of 1863, § 306. We have found no statute in effect as of the time of the adoption of that Code which provided the procedure upon which a person could be adjudged a lunatic by the court of ordinary and committed to the State hospital. Section 1815 of that Code placed the authority of committing insane persons to the lunatic asylum in the justices of the inferior court of the county, and not until the Code of 1873 do we find any provision for the procedure of committing an insane person by the ordinary to the State hospital. In revising § 1806 of the Code of 1863 (§ 1846 of the Code of 1868), which provided that, upon petition of any person setting forth that "another is liable to have a guardian appointed under the provisions of this article, the Ordinary," the codifiers of the Code of 1873 inserted between the words "article" and "the" the words "or is subject to be committed to the lunatic asylum of this State," and authorized a commission consisting of 12 persons to examine into his condition and the amount of his estate "for whom guardianship or commitment to the asylum is sought." Code of 1873, § 1855. It is apparent that the codifiers of the Code of 1873 were cognizant that the Constitution of 1868 abolished the inferior courts, and authorized the General Assembly to transfer the duties of those courts to such other tribunals as it might designate (§ 5126, Code of 1873), and at the time the inferior courts were abolished they had power, under § 1815 of the Code of 1863 (§ 1855, Code of 1868, which now appears as § 49-612 of the Code of 1933), to commit persons to the asylum. Under the present Code § 49-612, the ordinary, or in his absence from the county, or when he is unable to act from any cause, the judge of the superior court, on investigation of the facts, may commit such person to the present Milledgeville State Hospital. It is thus seen that, upon the abolition of the inferior courts, the

ordinary was expressly authorized, in addition to the power of appointing guardians for insane persons, to commit such persons to the State hospital, and to exercise what authority the justices of the inferior courts had at the time those courts were abolished in 1868.

By virtue of the act of Parliament of 1548 (2 & 3 Edw. VI, ch. 8, sec. 6, heretofore referred to), it was provided that, "if any person be or shall be untruly founden lunatic, idiot, or dead . . every person and persons grieved or to be grieved by any such office or inquisition shall and may have his or their traverse to the same immediately or after at his or their pleasure, and proceed to trial therein and have like remedy and advantage as in other cases of traverse upon untrue inquisitions or offices founden, any law, usage or custom to the contrary in anywise notwithstanding." Vol. 5, St. at Large, pp. 301, 302, supra. Under this statute, when a person had been found a lunatic by inquisition and wished to vacate the committal on the ground that he was sane, he presented a petition for leave to traverse in the Petty Bag office; the record was made up and carried to the King's Bench Division for trial before a jury in the same manner as an ordinary issue. 2 Rapalge & Lawrence's Law Dict., (Traverse) 1289; 9 Digest of English Case Law, 578. Under this statute, the courts of England held that, where one had been adjudged by the King's Committee to be a lunatic, he could as a matter of right file a traverse to the office or inquisition and have the issue of sanity tried by a jury. Matter of Cumming (1852), 42 Eng. Rep. Reprint 660; Stevenson's Case (1815), 34 Eng. Rep. Reprint 520; Matter of John Bridge (1841), 41 Eng. Rep. Reprint 520; 3 Blackstone 260. This right of traverse was recognized by some of the common-law States of the American Union. Walker v. Russell, 10 S. C. 82. In New Jersey and New York, one who had been adjudged a lunatic could file a traverse, but whether a trial would be had was in the discretion of the court. In re Hannah, 76 N. J. Eq. (73 Atl. 849); In Re De Hart, 51 N. J. Eq. 611 (28 Atl. 603); Matter of Russell (N. Y.) 1 Barb. Ch. 38.

The General Assembly of this State recognized this right, in principle, in the act of 1857, page 123, supra, wherein it was provided that, in case of insane persons whose friends proposed to

pay the regular charges and expenses, such persons could, upon certificate of three respectable physicians, obtain admission into the asylum, provided that no demand of the person alleged to be a lunatic, or by his friend or relative, shall be made for trial of the question of lunacy by a jury; but the act further provided that "nothing shall be construed to prevent a jury trial when asked or demanded, whether such demand be made by the lunatic or by any relative or friend of his, and whether such demand for a jury trial to try the question of lunacy be made before or at any time after the arrival of such lunatic in the said asylum." It is thus apparent that, at the time the provisions of what are now Code §§ 35-236 and 35-237 were placed in the Code of 1863, the codifiers were seeking to put into statutory form the right of a person who had been adjudged a lunatic to have the question of whether he had been truly found to be insane passed upon by a jury. No doubt, at that time the General Assembly wanted to throw a safeguard around persons who had been unjustly or improperly adjudged to be insane, and, in view of the fact that the mental hospital was then located in Baldwin County, they located that county as the jurisdiction in which to try the issue, the superintendent of the hospital and the lunatic residing therein. The General Assembly, in adopting the Code of 1933, continued the right of a person adjudged to be insane to have the question of his sanity reviewed by a jury in Baldwin County.

Since the Court of Ordinary of Baldwin County has general and exclusive jurisdiction over the committal of persons to the Milledgeville State Hospital on account of insanity, and over the affairs of lunatics, we are of the opinion that the petition of a person confined in that institution, under the provisions of these two Code sections, must be brought in the Court of Ordinary of Baldwin County, and that the applicant has a right to a jury trial in said court.

Therefore, questions 2 and 3 are answered in the affirmative.

*All the Justices concur, except Atkinson, P. J., not participating.*