39472. FULLER, Administrator, etc. v. WEEKES, Guardian.

Decided April 10, 1962—Rehearing denied April 24, 1962.

*Ben F. Sweet,* for plaintiff in error.

*Weekes & Candler, John Wesley Weekes,* contra.

NICHOLS, Presiding Judge. ■ The defendant in error, the guardian of the deceased plaintiff, contends in his brief that the plaintiff in error, the administrator of the deceased plaintiff's estate, is not a proper party to the appeal inasmuch as under *Code Ann.* § 49-316 he, as guardian, automatically became the person to administer such estate. Such Code section is applicable only during the pendency of the relationship and not afterwards, and where the sole remaining issue, at the time of the ward's death, is one of settlement (the ward's sanity having been previously restored), the guardian does not have authority to administer the estate of the ward. *Morgan v. Woods,* 69 Ga. 599 (2).

The further contention of the guardian that since he had not been discharged as guardian the legal residence of the ward was DeKalb County at the time of her death and not Fulton County, where the administrator was appointed, is without merit, for *Code* § 79-405, and the cases of *Ocean Accident &c. Co. v. Lovern,* 90 Ga. App. 708 (83 SE2d 862); and *Bennet v. Bennet,* 212 Ga. 292 (92 SE2d 11), relied upon, refer to guardians of the person and not to situations presented like the case sub judice where the ward was an inmate at the Georgia State Hospital at the time of the appointment of the guardian, was never in the custody of the guardian, and had been declared sane some years prior to her death and the sole remaining contact with the guardian at the time of the ward's death was with reference to whether a certain disbursement made by the guardian was proper. See *Squire v. Vazquez,* 52 Ga. App. 712 (3) (184 SE 629).

■ The sole remaining question to be decided is whether under all the evidence a verdict for the plaintiff was demanded or whether such evidence presented a question for the jury's determination.

While there was evidence which tended to show that the funds obtained by the administrator of the estate of the plaintiff's daughter as a result of the void judgment obtained against the ward were eventually used to pay expenses for such daughter's last illness and burial, such evidence neither supports the defendant's position nor minimizes the plaintiff's contentions, inasmuch as the question dealt with the action brought against the plaintiff in which the daughter's administrator sought to recover for support allegedly furnished the plaintiff by her daughter before the plaintiff was committed to Milledgeville, for there is no obligation of law requiring a parent of a thirty-five year old daughter to furnish such daughter with medical care or to provide for funeral expenses in the event of such daughter's death. See *New York Life Ins. Co. v. Gilmore*, 40 Ga. App. 431 (8) (149 SE 799), reversed on other grounds, where it was held that a son is not liable for his father's last illness and funeral expenses, and a guardian is without authority (with or without court approval), to pay the debts of a third person with the funds of his ward. *Georgia R. Bank &c. Co. v. Liberty Nat. Bank &c. Co.*, 180 Ga. 4 (4) (177 SE 803).

The defendant relies upon the case of *Strickland v. Peacock*, 209 Ga. 773 (77 SE2d 14), to support his position that once the sanity of his ward was restored and she had signed a receipt, on a check which she received from the defendant, acknowledging payment in full of all funds due, she was estopped from contesting the application for letters of dismission. It was held in that case that the act of 1947 (Ga. L. 1947, p. 1174; *Code Ann.* §§ 49-610.1 through 49-610.7), did not repeal by implication *Code* §§ 35-236 and 35-237, and that "the primary purpose of the act of 1947 was to repeal *Code* §§ 49-609, 49-610, which only provided how a person for whom a guardian had been appointed could, upon restoration to sanity, obtain a dismissal of the guardian, and to give the right to a person who had been restored to sanity to obtain an order declaring that his sanity had been restored, and in the same proceeding, upon obtaining such declaration, to have his guardian discharged." *Strickland v. Peacock*, supra, at page 775. Nor does a proper construction of Section 7 of the act of 1947, supra,

794

(*Code Ann.* § 49-610.6) require or even authorize a holding that a receipt (such as urged in the present case), signed by the ward after having been declared sane would have the effect of divesting the ordinaries of this State of the duty to require a proper accounting of the guardian's stewardship of the ward's property. This, together with the fiduciary relationship between the guardian and ward, forbids any such conclusion. See also *Code* § 20-206.

■ The evidence with reference to the action, the judgment on which was declared void, was based on the premise that the ward's daughter had supported the ward for a period of three years and five months prior to the ward being committed to the State Hospital at Milledgeville. The ward testified that she had not been supported by her daughter and had only visited the daughter's apartment on rare occasions. She also presented evidence, by other witnesses, that she had been gainfully employed and resided in the homes where she was employed and when not employed resided apart from her daughter. The guardian testified that he obtained his information from the ordinary and from other persons who, it appears, were directly or indirectly interested in transferring the funds in the ward's estate to the estate of the ward's deceased daughter. No evidence was adduced to show that there was any agreement between the ward and her daughter whereby the ward would pay for any support furnished by the daughter, nor was any evidence adduced which showed that the ward and her daughter lived in the same household, the only evidence being that the ward's niece had on occasion seen the ward at the apartment of her now deceased daughter, which evidence did not show the deceased daughter contributed to her mother's (the ward's) support. The testimony of the plaintiff, the ward, that she did not pay the rent, buy groceries, etc., at the daughter's apartment when considered with the other testimony that she spent only four nights (two during the Christmas season of 1949 and two immediately before she was committed to the State Hospital), does not authorize a finding that the daughter contributed to her mother's support so as to authorize any payment by the guardian to the estate of her daughter. "*Code* § 3-107

provides: 'Ordinarily, when one renders services or transfers property valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof; but this presumption does not usually arise in cases between very near relatives.' In order to sustain a recovery by a child against a parent for services in the nature of care and attention such as are usually bestowed because of a natural sense of duty and affection arising out of the relationship, it must affirmatively appear that the services were performed under an express contract that the parent would pay for them, or the surrounding circumstances must plainly indicate that it was the intention of the parties that compensation should be paid. *Hudson v. Hudson*, 90 Ga. 581 (16 SE 349); *O'Kelly v. Faulkner*, 92 Ga. 521 (17 SE 847)." *Freeman v. Collier*, 204 Ga. 329, 335 (50 SE2d 61).

Assuming, but not deciding, that the exercise of ordinary care on the part of the guardian in investigating the claim made against the ward for support allegedly furnished her would exonerate the guardian from paying such sum of money, the action of the guardian in accepting the statements, admittedly hearsay, that the deceased daughter had supported the ward without making any investigation to determine if such support was in fact furnished or if the ward was legally bound to pay the daughter's estate for such support fails to show that he exercised such degree of diligence.

The evidence demanded a verdict for the caveatrix and the judgment of the trial court overruling the motion for judgment non obstante veredicto must be reversed with direction that a judgment in accordance with such motion be rendered.

*Judgment reversed with direction. Frankum and Jordan, JJ., concur.*