## A93A1220. GROSS v. THE STATE.
### (435 SE2d 496)

BLACKBURN, Judge.

In 1980, appellant Jack Gross was found not guilty by reason of insanity on charges of reckless conduct and was ordered into the custody of the Department of Human Resources for treatment. Gross has remained in involuntary commitment in accordance with OCGA § 17-7-131 (e) since July 1980. Pursuant to OCGA § 17-7-131 (f) (1), Gross has applied for release to the State Court of Chatham County every year, except 1989. After a hearing on each application, they were denied by the trial court. Gross appeals the trial court's orders dated October 2, 1991, and December 7, 1992, denying his most recent motions for release.

1. Gross argues that the trial court erred in denying his most recent motions for release, as there was insufficient evidence for him to remain involuntarily committed pursuant to OCGA §§ 17-7-131 and 37-3-1 (12). We cannot agree. The record reveals that Gross is diagnosed with chronic paranoid schizophrenia. Gross testified on his own behalf that he was physically able to take care of himself. He also testified that, if released, he would take his medicine. He stated that he needed to get home to his wife and six young children, although, in actuality, he is divorced and his three children are adults. The record indicates that Gross believes he is a secret service agent working at the direction of the President of the United States. Originally, Gross testified that if the President directed him to eliminate a person who was a communistic threat, he would have to follow the President's orders. Gross then modified his testimony by stating that, "if it had a bearing on" his release, he would not eliminate anyone. He further testified, after much prodding by his attorney, that if he could get his freedom, he would "never take up a gun again."

An expert in forensic evaluation and diagnosis of mental illness testified that Gross needs supervision 24 hours per day and that Gross could cause "possible eminent harm to himself or others." He further testified that Gross' "delusional system of being [a] Secret Service Agent could put [Gross] in a very precarious position. . . . [I]t might put him in the position where he could get shot. . . . [H]is insistence upon carrying a gun is what frightens me. . . ." The expert also testified that Gross has some physical problems and possible heart difficulties that add to Gross' inability to care for his own needs.

The senior psychologist for the Forensic Service Division of Cen-

tral State Hospital testified that he had never seen Gross in an unmedicated condition and that if Gross was released he is unsure whether Gross would continue with his medication. He continued that even a minor reduction in Gross' medication could cause Gross to possibly act on the delusional plots. He further testified that he did not believe that Gross would give up the right to own guns, despite Gross' testimony to the contrary. The expert opined that Gross' prognosis in an unstructured environment would be poor to guarded, and that, if released, Gross could very possibly cause harm to himself or others.

With the exception of one incident, Gross never demonstrated violent behavior while at Southwestern State Hospital. In 1992, he attempted to leave the hospital grounds and "took a swing" at the hospital employee who tried to stop him. Gross testified that the hospital employee had stabbed him, and that he acted in self-defense. However, the employee did not stab Gross.

The evidence and testimony indicate that Gross continues to be highly delusional. He believes that he is a secret service agent working for the government, that he has the ability to contact the President, and that he was secretly married to Queen Elizabeth when he was eight years old. Furthermore, Gross has delusions that certain people are trying to kill him. The experts testified that Gross could hurt himself or others while acting on one of his delusions, even if Gross remained on medication.

In deciding applications for release, "[t]he court may rely on the presumption of continued insanity, OCGA § 24-4-21, and is not bound by the opinions of either lay or expert witnesses, [cits.]." *Butler v. State*, 258 Ga. 344, 345 (369 SE2d 252) (1988). See also *Stephens v. State*, 201 Ga. App. 744 (412 SE2d 571) (1991). In the case sub judice, none of the professionals who have evaluated Gross recommended him for release. In fact, all of the experts agreed that, if released, Gross could be a threat to himself or others. Upon our review of the record, we found sufficient evidence of Gross' continued insanity and need for involuntary inpatient treatment. See OCGA § 37-3-1 (9.1) and (9.3).

2. In his second enumeration of error, Gross asserts that the trial court erred by refusing to allow him to be released on a conditional basis pursuant to OCGA § 17-7-131 (e) (5) (A). However, no evidence was presented with regard to the existence of a 24-hour structured group home. In fact, the testimony indicated that there were no such facilities in middle or southeastern Georgia. Furthermore, due to our holding that Gross is in need of inpatient treatment, this enumeration is without merit.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED AUGUST 24, 1993.

Mark J. Nathan, for appellant.
Spencer Lawton, Jr., District Attorney, Leonard M. Geldon, Assistant District Attorney, for appellee.