## A08A1812. BONNEY v. THE STATE.
### (673 SE2d 102)

ADAMS, Judge.

Gladys Bonney pled not guilty by reason of insanity on two counts of aggravated stalking. The court then heard evidence and acquitted the accused based on a finding of insanity. The court entered judgment on October 30, 2007, and retained jurisdiction

---

pending a determination of the form of treatment Bonney should receive for her mental illness. On February 22, 2008, the trial court found that Bonney met the criteria for civil commitment and placed her in the custody of the Department of Human Resources ("DHR") for inpatient treatment at Georgia Regional Hospital or any other designated DHR facility. Bonney appeals, pro se, and contends she did not meet the criteria for civil commitment and that therefore she should have been released.[1] Bonney has been incarcerated or hospitalized since at least March 2007.

On appeal of a trial court's finding of insanity, we assess whether "after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was sane." (Citations and punctuation omitted.) *Nagel v. State*, 262 Ga. 888, 892 (2) (b) (427 SE2d 490) (1993).[2]

According to Georgia law, a criminal defendant found not guilty by reason of insanity is to be evaluated to determine whether they should be involuntarily committed (to either inpatient or outpatient services) or discharged:

> According to our statutory scheme, a criminal defendant found not guilty by reason of insanity is ordered to be detained in a mental health facility for evaluation for a period not to exceed 30 days. OCGA § 17-7-131 (d). If the evaluation report shows that the defendant does not meet the statutory inmate commitment criteria, the trial court may issue an order discharging defendant without a hearing, OCGA § 17-7-131 (e) (1), and if not so discharged, a hearing must be conducted. OCGA § 17-7-131 (e) (2). If, after a hearing, the trial court determines that defendant meets the statutory inpatient commitment criteria, defendant is to be committed to the Department of Human Resources to receive involuntary treatment; however, such determination by the court triggers a panoply of due process rights as set forth in OCGA § 17-7-131 (e) (4). Finally, the

---

[1] This Court has previously addressed an appeal from the findings made at a commitment hearing. See, e.g., *Lawrence v. State*, 201 Ga. App. 7 (410 SE2d 136) (1991); *Williams v. State*, 185 Ga. App. 559, 560 (1) (365 SE2d 141) (1988).

[2] In cases such as these, "the trial court must supply specific findings regarding the evidence of sanity and insanity, and his conclusions based on that evidence." *Nagel*, 262 Ga. at 892 (2) (b). Here, however, Bonney has not raised any issue regarding the form of the trial court's findings either below or on appeal. See OCGA § 9-11-52 (c); *Waters v. Ellzey*, 290 Ga. App. 693 (660 SE2d 392) (2008); *Ruff v. Central State Hosp.*, 192 Ga. App. 631, 632 (1) (385 SE2d 734) (1989).

court is authorized to discharge defendant upon successful completion of treatment. OCGA § 17-7-131 (e) (5).

*Shepherd v. State*, 280 Ga. 245, 251 (626 SE2d 96) (2006). See generally *Sikes v. State*, 268 Ga. 19 (485 SE2d 206) (1997). The statute also provides that if, after the commitment hearing, the criteria for civil commitment are not met, "the defendant must be discharged." OCGA § 17-7-131 (e) (2).

Here, the trial court found that Bonney should be involuntarily committed to inpatient treatment. The criteria for finding inpatient commitment is satisfied upon a showing that the person is mentally ill and is one:

> Who presents a substantial risk of imminent harm to that person or others, as manifested by either recent overt acts or recent expressed threats of violence which present a probability of physical injury to that person or other persons; or

> Who is so unable to care for that person's own physical health and safety as to create an imminently life-endangering crisis, and

> Who is in need of involuntary inpatient treatment.

OCGA § 37-3-1 (9.1).

When determining whether involuntary commitment is warranted, a trial court "may take judicial notice of evidence introduced during the trial of the defendant." OCGA § 17-7-131 (e) (3). Here, Bonney's verdict of not guilty by reason of insanity established both that she committed the criminal offense and that she did so because of a mental illness. *Nagel*, 262 Ga. at 889-890 (1). Thus it was established that she committed aggravated stalking in that she twice contacted the victim unlawfully, without consent, and in violation of a court order, for the purpose of harassing and intimidating the victim. Moreover, "[t]he fact that a person has been found[,] beyond a reasonable doubt[,] to have committed a criminal act indicates dangerousness." *Benham v. Ledbetter*, 785 F2d 1480, 1487 (11th Cir. 1986), quoted with approval in *Nagel*, 262 Ga. at 889-890 (1).

It was also established that she was mentally ill at the time. The evidence included that Bonney had a "delusional compulsion" and that the delusion was directly related to the charge of aggravated stalking. She believed that the victim and she were married and that he was the father of her children, neither of which was true. Indeed, it was Bonney who initially "invoked the court's ruling that [she]

was insane" when she entered into a plea of not guilty by reason of insanity. *Moses v. State*, 167 Ga. App. 556, 558 (307 SE2d 35) (1983), overruled on other grounds, *Nagel*, 262 Ga. at 891. And when that judgment was entered, a presumption attached that the insanity, once proven, continues to exist thereafter. See OCGA § 24-4-21; *Nagel*, 262 Ga. at 889 (1).[3]

In addition to the trial evidence and the presumption, evidence presented at the commitment hearing showed that Bonney has now been diagnosed with "schizophrenia — disorganized type"; that she has delusions as a result; that she does not believe that she has a severe mental illness; that therefore she does not believe she has a need for the medication as prescribed by the psychiatrist; that if she were to avoid her medication, she would "become disorganized and place herself at risk and perhaps others at risk"; that she "would likely again be acting on her delusions"; that her delusions caused her to stalk one of her instructors because she believed that she was married to him; and that although she was making progress on some of these fronts, her "delusional system" remained intact at the time of the hearing. Evidence was also presented to show that involuntary outpatient care "would not be conducive to her continued improvement or even safe for her" and that the odds were "extremely low" that she could be treated successfully as an outpatient. Bonney had not, however, ever exhibited any violent tendencies or done anything to harm anyone while she was in the custody of DHR and under psychiatric care.

This is a very close case. But Bonney presented very little evidence to rebut the presumption of insanity or the evidence that she might be at risk to herself and others if she were to be released or ordered to receive outpatient care, and therefore she did not carry her burden. See, e.g., *Gross v. State*, 210 Ga. App. 125 (435 SE2d 496) (1993).

We note that Bonney may apply for release under OCGA § 17-7-131 (f) at any time and annually thereafter. In connection with an application, Bonney shall have the rights set forth below:

(A) A notice that a hearing will be held and the time and place thereof;

(B) A notice that the defendant has the right to counsel and that the defendant or his representatives may apply immediately to the court to have counsel appointed if the defendant cannot afford counsel and that the court will

---

[3] "[T]he presumption of continued insanity applies to initial commitment hearings under OCGA § 17-7-131 (e) as well as to subsequent release hearings under OCGA § 17-7-131 (f)." *Williams*, 185 Ga. App. at 560 (1).

appoint counsel for the defendant unless he indicates in writing that he does not desire to be represented by counsel;

(C) The right to confront and cross-examine witnesses and to offer evidence;

(D) The right to subpoena witnesses and to require testimony before the court in person or by deposition from any person upon whose evaluation the decision of the court may rest;

(E) Notice of the right to have established an individualized service plan specifically tailored to the person's treatment needs, as such plans are defined in Chapter 3 of Title 37 and Chapter 4 of Title 37; and

(F) A notice that the defendant has the right to be examined by a physician or a licensed clinical psychologist of his own choice at his own expense and to have that physician or psychologist submit a suggested service plan for the patient which conforms with the requirements of Chapter 3 of Title 37 or Chapter 4 of Title 37, whichever is applicable.

OCGA § 17-7-131 (e) (4).

Also,

[a]t any time and without notice, a person detained by a facility or a relative or friend on behalf of such person may petition, as provided by law, for a writ of habeas corpus to question the cause and legality of detention and to request any court of competent jurisdiction on its own initiative to issue a writ for release. . . .

OCGA § 37-3-148 (a). See also *Hogan v. Nagel*, 273 Ga. 577 (543 SE2d 705) (2001).

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JANUARY 27, 2009.

Gladys Bonney, *pro se.*

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellee.